

Julie A. Uebler, Esquire
uebler@ueblerlaw.com

April 11, 2025

<u>VIA ECF FILING SYSTEM & ELECTRONIC MAIL</u>
(Chambers_Judge_Marston@paed.uscourts.gov)

The Honorable Karen Spencer Marston
United States District Court
Eastern District of Pennsylvania
United States Courthouse
601 Market Street, Room 16613
Philadelphia, Pennsylvania 19106

      Re:   <u>Alana M. O'Reilly, Ph.D. v. The Institute For Cancer Research, et al.</u>
              <u>Civil No.: 2:24-cv-05315-KSM</u>

Dear Judge Marston:

Pursuant to the Court's Order dated March 20, 2025 (ECF No. 33), Plaintiff, Alana M. O'Reilly, Ph.D., submits this letter brief on the Question Presented as set forth herein.

<u>Question Presented</u>: Are the entity Defendants precluded from raising a "good faith" defense to punitive damages pursuant to <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526 (1999), if they continue to assert the attorney-client and work product privileges to shield discovery of their response to Plaintiff's administrative complaint filed with the Philadelphia Commission on Human Relations ("PCHR") on August 31, 2023, including the investigation conducted in response to the complaint, any conclusions reached relating to the complaint, any corrective action taken in response to the complaint, and any steps taken to prevent future discrimination and/or retaliation as a result of such complaint?

<u>Suggested Answer</u>: Yes.

101 Lindenwood Drive, Suite 225, Malvern, PA 19355
484.875.3186   www.ueblerlaw.com

The Honorable Karen Spencer Marston
April 11, 2025
Page 2

Statement of Relevant Facts

On August 31, 2023, Plaintiff filed an administrative complaint with the PCHR in which she asserted claims for sex-based discriminatory harassment and retaliation ("PCHR Complaint"). ECF No. 1, Exhibit 1. In her PCHR Complaint, Plaintiff accused the Cancer Center Director, Jonathan Chernoff, of specific acts of alleged sex-based harassment and retaliation that violated the corrective action that was imposed in response to her prior sex harassment complaint against him, including: (1) taking photos of Plaintiff during a presentation of her work on January 18, 2023, which her former colleagues described as shocking and unsettling; (2) contacting Plaintiff directly via email on January 23, 2023, to ask that she resume a work relationship with him; and (3) denying Plaintiff's request for a routine institutional letter of support for a grant application on March 23, 2023. Id.

During a meeting with her supervisors on January 25, 2023, Plaintiff reported her concerns about Defendant Chernoff's conduct in January 2023. ECF No. 1, Exhibit 1, ¶¶ 50-52. During their depositions, Plaintiff's supervisors both denied recognizing Plaintiff's communications to them on January 25, 2023, as a complaint of harassment pursuant to the entity Defendants' Policy Against Workplace Harassment and Violence. Exhibit C, Wiest Depo at 67:06-69:04; Exhibit D, Golemis Depo at 108:18-111:24. As a result, the first time the entity Defendants acknowledge receiving notice of Plaintiff's complaints of discriminatory harassment and retaliation was upon receipt of the PCHR Complaint.

In their Answer to the PCHR Complaint, the entity Defendants made the following assertions and conclusions relating to the alleged conduct in 2023: (1) Dr. Chernoff did not take pictures of Plaintiff during her presentation on January 18, 2023; (2) Dr. Chernoff did not violate any previously imposed corrective action, since such instructions were not "a complete ban on

The Honorable Karen Spencer Marston
April 11, 2025
Page 3

any interaction between" Dr. Chernoff and Plaintiff; (3) Respondents did not deny Dr. O'Reilly a letter of support for the ReWARD grant; (4) Respondents did not subject Dr. O'Reilly to sex-based harassment; and (5) Respondents did not subject Dr. O'Reilly to retaliation. Exhibit E, ¶¶ 45, 49, 64, 66-74. [1]

Holly Molle, Sr. Business Partner, Human Resources, "verified" the entity Defendants' PCHR Answer. Exhibit E, O'REILLY 000130, Verification. However, as is clear from the text of the Verification and Ms. Molle's testimony, the entity Defendants' Human Resources representative did not have any personal knowledge of the fact assertions contained in the PCHR Answer. Exhibit F, Molle Depo at 77:20-24; 98:20-100:17; 102:07-109:06.

During their depositions, Defendant Chernoff and David Wiest, the Chief Scientific Officer who has been assigned to be Plaintiff's supervisor and who reports to Defendant Chernoff, directly contradicted each other with respect to who made the decision to deny Plaintiff's request for an institutional letter of support in March 2023. Exhibit G, Chernoff Depo at 195:10-196:13; 197:06-198:10; 200:07-201:14; 202:20-205:14; Exhibit C, Wiest Depo at 85:02-90:21.

The entity Defendants have not imposed any corrective action in response to Plaintiff's PCHR Complaint, and have imposed no restrictions on Defendant Chernoff's ability to influence the terms and conditions of Plaintiff's employment. Exhibit G, Chernoff Depo at 215:22-219:21;

---

[1] At the time she filed her PCHR Complaint, Plaintiff did not have access to the letter presented to Defendant Chernoff in 2015, which contained the entity Defendants' corrective action following her earlier complaint, which has since been produced in discovery. Exhibit A. Instead, Plaintiff was only aware of the letter her former attorney received from Temple University's in-house counsel, Fay Trachtenberg, Esquire, on January 29, 2015. Exhibit B. Based on the entity Defendants' PCHR Answer, it appears that Defendants' counsel also was not aware of the 2015 corrective action letter at the time they filed the verified PCHR Answer. Exhibit E.

The Honorable Karen Spencer Marston
April 11, 2025
Page 4

Exhibit I (P-Dep 52); Exhibit H, Record Depo at 41:01-41:09; 92:19-95:08. In fact, when Plaintiff wanted to respond to a request to present her work at a faculty retreat to collaborate with her colleagues in 2024, the entity Defendants were not willing to instruct Defendant Chernoff to stay away. Exhibit H, Record Depo at 96:15-100:07.

Argument

1. The Kolstad "Good Faith" Defense To Punitive Damages

The law recognizes that an employer sued for violations of Title VII of the Civil Rights Act will be subject to an award of punitive damages if a jury finds that a managerial official of that employer personally acted with malice or reckless indifference to the plaintiff's federally protected rights. Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999); Third Circuit Model Instructions, Title VII, § 5.4.2. Such an employer may assert a "good faith" defense to punitive damages by demonstrating a good faith attempt to comply with the law, for example, by adopting and implementing policies and procedures designed to prevent the unlawful discrimination or retaliation suffered by the plaintiff. Id.

The assertion of the Kolstad "good faith" defense requires an employer to establish both that it had an anti-discrimination policy in place, and that it made a good faith effort to enforce it, including in connection with its investigation into and conclusions about a plaintiff's complaints. Abromavage v. Deutsche Bank Sec. Inc., Civ. A. No. 18-6621, *3 (S.D.N.Y. Dec. 11, 2019). For example, a reasonable jury could conclude that an employer has failed to establish a good faith attempt to comply with the law if top management officials disregarded their own policies by refusing to remedy harassment even though they knew about it. Nitkin v. Main Line Health, 2021 WL 5631717, *9 (E.D. Pa. Nov. 29, 2021) (citing Bruso v. United States, 239 F.3d 848, 861 (7th Cir. 2001)); Davey v. Lockheed Martin Corp., 301 F.3d 1204, 1209-1210 (10th Cir. 2002) (even if

The Honorable Karen Spencer Marston
April 11, 2025
Page 5

employer presents evidence of non-discrimination policy and training, plaintiff may still recover punitive damages if employer failed to adequately address Title VII violations of which it was aware).

    2.    When A Defendant Asserts A Good Faith Belief Defense, The Defendant Puts At Issue The Communications Leading To The Good Faith Belief And Waives The <u>Attorney-Client And Work Product Privileges Relating to Those Communications.</u>

A privilege may implicitly be waived when a defendant asserts a claim or defense that in fairness requires examination of protected communications. <u>Abromavage</u>, Civ. A. No. 18-6621, *4 (citing <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991); Fed. R. Evid. 502(a)(3)). The "at-issue waiver rule" aims to prevent the unfairness that results when a party uses an assertion of fact to influence the jury while denying its adversary access to privileged material potentially capable of rebutting the assertion. <u>Id.</u> (internal citations omitted). A defendant invoking its good faith may place privileged communications at issue even if it does not expressly assert that it relied on an attorney's advice. <u>Id.</u> at *6.

Although attorney-client communications are not automatically put at issue whenever a client's state of mind is at issue, asserting a "good-faith" belief defense puts at issue the communications leading to the good-faith belief, waiving the privilege around those communications. <u>Doe v. Schuylkill County Courthouse</u>, 343 F.R.D. 289, 295 (M.D. Pa. 2023) (citing <u>Rhone-Poulenc Rorer Inc. v. Home Indem. Co.</u>, 32 F.3d 851, 864 (3d Cir. 1994); <u>United States v. Medicor Associates, Inc.</u>, 2014 WL 12588331, at *6 (W.D. Pa. 2014) (citing <u>Cox v. Adm'r</u>, 17 F.3d 1386, 1419 (11th Cir. 1994) (noting that affirmatively asserting good faith, rather than mere denial of criminal intent, injects the issue of the client's knowledge of the law into the case)); <u>Securities and Exchange Commission v. Honig</u>, 2021 WL 5630804, *14 (S.D.N.Y. Nov. 30, 2021) (in SEC enforcement action, finding defendant waived privilege where examination of

privileged communications may demonstrate falsity of his claim that he believed in good faith that he was complying with the law).

    3.    <u>Defendants Are Precluded From Asserting The Kolstad "Good Faith" Defense If They Continue To Shield Discovery Of Their Response (Or Lack Thereof) To Plaintiff's PCHR Complaint With Privilege Objections.</u>

In this case, Plaintiff, a current employee of the entity Defendants, made a complaint of sex-based harassment and retaliation in her PCHR Complaint. ECF No. 1, Exhibit 1. To prevail on a <u>Kolstad</u> defense, the entity Defendants would have to show that they had a policy in place that prohibits unlawful sex-based harassment and retaliation, and that they made good faith efforts to comply with the law when they responded to Plaintiff's complaint, including with respect to their investigation, any conclusions reached relating to allegations in the complaint, any corrective action taken in response to the complaint, and any steps taken to prevent future discrimination and/or retaliation as a result of such complaint. <u>See</u>, Section 2., above.

Here, discovery has shown that the only investigation conducted by the entity Defendants in response to Plaintiff's PCHR complaint of discriminatory harassment and retaliation was conducted by their current outside counsel, Elizabeth Malloy, Esquire. Exhibit E.[2] As a result, the entity Defendants' decisions about whether Plaintiff's allegations could be substantiated, whether to impose corrective action, and the actions taken (or not) to prevent future discrimination and/or retaliation against Plaintiff were all based on outside counsel's investigation.

If the entity Defendants continue to assert the attorney-client and work product privileges to shield discovery of counsel's investigation, then they must be precluded from asserting a

---

[2] Defendants' discovery responses, in which they object on privilege grounds to producing any documents relating to their response to Plaintiff's PCHR Complaint other than their PCHR Answer, were included in Plaintiff's letter to the Court on March 18, 2025.

The Honorable Karen Spencer Marston
April 11, 2025
Page 7

"good faith" defense to punitive damages in this case. To allow otherwise would improperly deny Plaintiff access to the only evidence available to rebut the assertion that the entity Defendants made "good faith" attempts to comply with the law. See Section 2., above. For example, on what basis did the entity Defendants conclude that Defendant Chernoff did not take photos of Plaintiff? Similarly, on what basis did the entity Defendants decide not to discipline Defendant Chernoff for his behavior towards Plaintiff, or take steps to prevent further harassment and retaliation, despite evidence that Defendant Chernoff is lying about his involvement in the decision to deny Plaintiff's request for the letter of support? See Statement of Relevant Facts, above.

      Of course, Plaintiff recognizes that a defendant does not always implicitly waive the attorney-client privilege and/or the work product privilege as to outside counsel's investigation of an employee's discrimination or retaliation complaints by asserting the Kolstad "good faith" defense. For example, in United States Equal Employment Opportunity Commission v. The George Washington University, 342 F.D.R. 161 (D.D.C. 2022), the court considered the EEOC's argument that the defendant had triggered the "at issue privilege waiver" by asserting the Kolstad defense in a gender discrimination case. There, the EEOC sought access to an investigation conducted by outside counsel in response to the plaintiff's internal complaint that the defendant had treated her differently than a male counterpart, including with respect to pay. Id. In finding that the "at issue privilege waiver" did not require the defendant to make choice between disclosing its privileged investigation (and related conclusions) and asserting the Kolstad "good faith" defense, the court distinguished the facts from Abromavage because the decisions in question all pre-dated counsel's investigation of the internal complaint. Id. at 188-189; See also Benson v. City of Lincoln, 343 F.R.D. 595 (D. Neb. 2023) (at issue privilege waiver not invoked

The Honorable Karen Spencer Marston
April 11, 2025
Page 8

where employer defendant relies on advice from counsel concerning reasons for terminating plaintiff).

Here, in contrast, the way in which the entity Defendants responded (or chose not to respond) to the claims of discriminatory harassment and retaliation contained in Plaintiff's PCHR Complaint are directly relevant to whether they made good faith efforts to comply with the law. The Court must not permit the entity Defendants to rely on privilege to shield their response to Plaintiff's complaints while at the same time affirmatively arguing that they complied with Title VII and the Philadelphia Human Relations Act in good faith. This is exactly the type of situation in which a defendant may not use the advice of counsel as both a sword and a shield. See, e.g., Doe, 343 F.R.D at 296.

For the reasons set forth herein, Plaintiff respectfully asks this Court to preclude Defendants from asserting the Kolstad "good faith" defense to punitive damages unless they respond fully to Plaintiff's discovery about their response to her PCHR Complaint without asserting any privilege objections.

Respectfully,

UEBLER LAW LLC

/s/Julie A. Uebler
Julie A. Uebler, Esquire


Enclosures
cc:     Elizabeth A. Malloy, Esquire (via electronic mail)
        Benjamin L. Shechtman, Esquire (via electronic mail)