IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALANA M. O'REILLY, Ph.D. | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO.: 2:24-cv-05315-KSM |
| THE INSTITUTE FOR CANCER RESEARCH, TEMPLE UNIVERSITY HEALTH SYSTEM, TEMPLE UNIVERSITY, and JONATHAN CHERNOFF, MD, Ph.D. | : JURY TRIAL DEMANDED |
| Defendants. | : |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *DAUBERT* MOTION TO PRECLUDE TESTIMONY BY DEFENDANTS' DESIGNATED EXPERT, DAVID T. CURIEL, M.D., PH.D.

UEBLER LAW LLC

BY:  /s/ *Julie A. Uebler*
Julie A. Uebler, Esquire
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
(484) 875-3186 (Voice)
(484) 875-9273 (Fax)
uebler@ueblerlaw.com

*Attorney for Plaintiff*
*Alana M. O'Reilly, Ph.D.*

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. This Court Must Preclude Defendants' Reliance On Dr. Curiel's Expert Testimony Because It Fails To Meet The Requirements Of Rule 702 ................. 2

        1. Legal Standard For Admissibility Of Expert Testimony ............................... 2

        2. Dr. Curiel's Opinion Is Not Admissible Because It Will Not Assist The Trier Of Fact ......................................................................................................... 2

        3. Dr. Curiel's Opinion Is Not Admissible Because It Is Not Reliable .............. 4

    B. In The Alternative, This Court Must Preclude Dr. Curiel's Expert Testimony Because It Fails To Meet The Requirements Of Rule 403 ................................... 6

III. CONCLUSION ..................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Brooks v. Trans Union LLC,*
  Civ. A. No. 22-cv-00048, 2024 WL 3625143 (E.D. Pa. Aug. 1, 2024) ..............................2

*EEOC v. Bloomberg L.P.,*
  2010 U.S. Dist. LEXIS 92511 (S.D.N.Y. Aug. 31, 2010).....................................................5

*Securities and Exchange Commission v. McDermott,*
  Civ. A. No. 19-cv-4229, 2022 WL 952895 (E.D. Pa. Mar. 30, 2022)................................4


**Other**   **Page(s)**

Fed. R. Evid. 702 ...............................................................................................................1, 2, 4, 5

Fed. R. Evid. 403 ........................................................................................................................1, 6

I.      INTRODUCTION

In this case, Plaintiff Alana M. O'Reilly, Ph.D., seeks to hold Defendants accountable for making exceptions to its anti-discrimination policies and procedures for a high-level executive who repeatedly subjected her to sex harassment and retaliation that put her job in jeopardy. Specifically, Dr. O'Reilly alleges that Defendants' decision in March 2023 to deny her request for the institutional letter of support she needed to submit her application for the ReWARD grant to the National Institutes of Health ("NIH") constituted sex-based harassment and retaliation. As the Court is aware, Defendants eventually told Dr. O'Reilly that they would provide the requested letter of institutional support more than six (6) months later, after Dr. O'Reilly filed an administrative complaint with the Philadelphia Commission on Human Relations. As part of its defense against Dr. O'Reilly's claims, Defendants have identified David T. Curiel, M.D., Ph.D., a Professor at Washington University School of Medicine, to testify as an expert witness at the trial in this matter.

According to Dr. Curiel's Report, Defendants intend to introduce his opinion that the timing of Dr. O'Reilly's application for the ReWARD grant had no impact on the prospects of the application being funded. See Exhibit 1 (Defendant's Expert Report and related Exhibit). Plaintiff respectfully moves this Court to preclude Defendants' reliance on Dr. Curiel's opinion at any stage in this case because his opinion is not admissible under Rule 702 and/or Rule 403 of the Federal Rules of Evidence.

II.  ARGUMENT

    A.  This Court Must Preclude Defendants' Reliance On Dr. Curiel's Expert Testimony Because It Fails To Meet The Requirements Of Rule 702.

        1.  Legal Standard For Admissibility Of Expert Testimony.

Rule 702 of the Federal Rules of Evidence provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise only if: (a) the expert's knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed R. Evid. 702. Rule 702 requires the trial judge to act as a "gatekeeper," to ensure that "any and all expert testimony or evidence is not only relevant, but also reliable." Brooks v. Trans Union LLC, Civ. A. No. 22-48, 2024 WL 3625143, *3 (E.D. Pa. Aug. 1, 2024) (internal citations omitted). Specifically, expert testimony must "fit" the issues in the case, meaning the "expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Id. at *4 (internal citations omitted). In addition, to be considered "reliable," expert testimony must be based on "the methods and procedures of science rather than on subjective belief or unsupported speculation," and the expert must have "good grounds" for his belief." Id. Neither of these requirements is satisfied in this case.

        2.  Dr. Curiel's Opinion Is Not Admissible Because It Will Not Assist The Trier Of Fact.

In this case of discriminatory harassment and retaliation, the jury will be asked to determine what motivated Defendants' decision in March 2023 to deny Dr. O'Reilly's request for an institutional letter of support. Dr. O'Reilly argues that the decision was motivated by the

discriminatory and retaliatory intent of Cancer Center Director, Jonathan Chernoff. Although it will be difficult given the contradictory testimony between Dr. Chernoff and David Wiest, the Chief Scientific Officer, about who made the decision to deny Dr. O'Reilly's request and for what reason, Plaintiff assumes Defendants will argue that there was some legitimate business reason to deny Dr. O'Reilly's request in March 2023.

Given the opinion in Dr. Curiel's Report, Plaintiff presumes that Defendants are trying to use this expert to claim: "no harm, no foul." Essentially, Dr. Curiel asserts that Dr. O'Reilly experienced no "harm" arising out of the denied letter of support in March 2023, since she received a letter later that year, allowing her to file her grant application in October 2023. As noted above, Dr. Curiel opines that the "delay" in Dr. O'Reilly's ability to file the grant application had no impact on the NIH's decision not to fund the grant. Exhibit 1, generally. However, Dr. Curiel's opinion is not relevant to the claims in this case, and will not assist the trier of fact to determine what motivated Defendants to deny the requested letter of support in the first place.

As Dr. O'Reilly has alleged, and this Court has confirmed, the denial of the requested institutional letter of support in March 2023, standing alone, can constitute a tangible employment action sufficient to state a claim for quid pro quo harassment and/or retaliation, regardless of the fact that Defendants changed their minds and later provided the letter of support. ECF No. 38 at 25-30. As Dr. O'Reilly has alleged, and as confirmed by the Court, the discriminatory and/or retaliatory act was the denied request for the institutional letter of support itself, not the fact that the grant application was never funded. Id.

Aside from the designated "opinion" in his Report, Dr. Curiel also appears to try to contradict the contention made by Dr. O'Reilly during her deposition that it was entirely possible

3

that her ReWARD grant application may have been funded had she been able to submit it in June 2023. Exhibit 1, at 6-8. In support of his "assertion," Dr. Curiel extrapolates from the numbers and amounts of grants that were funded in the June grant cycle versus the October cycle that Dr. O'Reilly had a better chance of being funded in the October cycle. Id. However, this "assertion" is not the type of "analysis" that requires any kind of expertise or experience. If they believe that Dr. O'Reilly's contention about her chance of funding in June is not well-founded for the reasons cited by Dr. Curiel in his Report, Defendants can simply cross-examine her on those issues during the trial. Moreover, since the issue of whether Dr. O'Reilly's grant application was eventually funded (or not) is not material to the claims in this case, it is possible that the Court will preclude any discussion of whether it was funded. Even if such testimony is permitted, testimony from a purported expert on the workings of the NIH is certainly not necessary for the jury to understand these issues. For these reasons, Dr. Curiel's opinions and testimony will do nothing to assist the trier of fact in deciding any material issue in this case, and his Report and any related testimony should be excluded on this basis.

        3.      <u>Dr. Curiel's Opinion Is Not Admissible Because It Is Not Reliable.</u>

As noted above, Rule 702 requires expert testimony to be based on sufficient facts or data, to be the product of reliable principles and methods, and to show that the expert reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Where an expert relies on "assumptions that lack evidence or are wholly unreasonable," the expert's testimony should be excluded. <u>Securities and Exchange Commission v. McDermott</u>, Civ. A. No. 19-4229, 2022 WL 952895, *6 (E.D. Pa. Mar. 30, 2022) (internal citation omitted). Here, even if the Court were to find that Dr. Curiel's Report could assist the jury to evaluate a material issue in this case, his opinion that the timing of Dr. O'Reilly's applications for the ReWARD grant had no impact

4

on the prospects of the grant being funded must be excluded because it is based on nothing more than speculation and insufficient evidence or data.

In preparing his Report, all Dr. Curiel did was identify some very high level and unsupported percentages about the way grants are handled generally, make some generalized inferences about the likelihood of Dr. O'Reilly's grant being funded based on the volume of grants awarded on different dates, and then regurgitate the comments from the individuals who reviewed her grant submissions in October 2023 and in 2024. See Exhibit 1, generally. The fact that Dr. Curiel may have personal experience with the NIH grant process does not mean that his opinion about the likelihood of success of Dr. O'Reilly's grant application can be admitted as "expert" evidence. See, e.g., EEOC v. Bloomberg L.P., 2010 U.S. Dist. LEXIS 92511 (S.D.N.Y. Aug. 31, 2010) (excluding expert report where social psychologist relied on his own expertise rather than analytic strategies).

Dr. Curiel's Report simply does not meet Rule 702's requirement of reliability. For example, Dr. Curiel claims without citation that: (1) the "vast majority of R01 applications, perhaps as many as 95%, are not successful on the initial submission; and (2) "approximately 50% of applications [to the NIH] are deemed in the bottom half of the submissions and are not discussed by the Study Section committee members." Exhibit 1, at 5, 7. What is the basis for these estimates? Similarly, as noted above, what is the basis to conclude that a larger number of grants awarded in a later cycle meant that it was less likely that Dr. O'Reilly's grant application – had she been able to submit it in June 2023 – would not have been funded? Notably, Dr. Curiel admits in his Report that "each review cycle represented an independent body of experts who reviewed grants in a merit-based manner." Exhibit 1, at 6. Who were the reviewers for all of these cycles? What types of research did they value funding? How did Dr. O'Reilly's application

5

compare to the other grants submitted in June? Without any of this comparative data, Dr. Curiel's opinions are pure speculation, and must be excluded as unreliable.

  B.  In The Alternative, This Court Must Preclude Dr. Curiel's Expert Testimony Because It Fails To Meet The Requirements Of Rule 403.

Rule 403 of the Federal Rules of Evidence provides that a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Even if the Court determines that "expert" testimony about Dr. O'Reilly's chances of getting NIH funding for her ReWARD grant application in June 2023 may have been the same or differed from her applications in October 2023 or 2024 is marginally relevant, Dr. Curiel's "opinion" and testimony must be excluded pursuant to Rule 403.

Although Dr. Curiel's "opinion" is very narrowly stated, a large portion of his Report contains assessments and criticisms of Dr. O'Reilly's grant applications that have no relevance to the material facts in this case. For example, in the guise of contradicting the possibility that the NIH may have funded Dr. O'Reilly's ReWARD grant application if she had been able to file it in June 2023, Dr. Curiel's Report goes on for pages about the criticisms the reviewers had about the grant filing. Exhibit 1, at 7-8. None of this information is even marginally relevant to this case, particularly since Dr. O'Reilly's performance is not at issue, and even Dr. Curiel recognizes that the vast majority of NIH grant applications are rejected. Id., at 5. Allowing Defendants to present an "expert" witness whose main goal appears to be to criticize Dr. O'Reilly's grant submissions based on nothing more than pure speculation about whether a change in the filing date may have impacted the NIH's decision would clearly cause unfair prejudice, confuse the issues, and mislead the jury in this case. In addition, since this civil rights case is about Defendants' motives

6

in denying Dr. O'Reilly's initial request for the institutional letter of support in March 2023, and its significance at that time and for the six (6) months Dr. O'Reilly had to wait and wonder whether her employer would ever again support her research, allowing Defendants to waste time on this testimony during trial would cause undue delay.[1]

III.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully asks this Court to grant her Motion and exclude the expert report prepared by David T. Curiel, M.D., Ph.D., and any related testimony.

Respectfully submitted,

UEBLER LAW LLC

BY:   /s/ *Julie A. Uebler*
Julie A. Uebler, Esquire
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
(484) 875-3186 (Voice)
(484) 875-9273 (Fax)
uebler@ueblerlaw.com

*Attorney for Plaintiff
Alana M. O'Reilly, Ph.D.*

7

---

[1] Although not directly relevant to this Motion, it is interesting to note that Defendants' proposed expert on the workings of the NIH is employed at the same university as Siyuan Ding, Ph.D., one of the reviewers in the Study Section currently considering Dr. O'Reilly's pending R01 grant application. Certainly, if the Court permits this witness to testify at trial, Plaintiff plans to explore Defendants' motive in selecting this "expert," and whether it was motivated by their on-going retaliatory intent.