**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALANA M. O'REILLY, Ph.D., | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. 2:24-CV-05315 |
| v. | : |
| | : (JUDGE MARSTON) |
| | : |
| | : [ELECTRONICALLY FILED] |
| THE INSTITUTE FOR CANCER | : |
| RESEARCH, TEMPLE UNIVERSITY | : |
| HEALTH SYSTEM, TEMPLE | : |
| UNIVERSITY, and JONATHAN | : |
| CHERNOFF, MD, Ph.D., | : |
| | : |
| Defendants. | : |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT AS TO ALL REMAINING CLAIMS**

**COZEN O'CONNOR**

Benjamin L. Shechtman
bshechtman@cozen.com
Elizabeth A. Malloy
emalloy@cozen.com
1650 Market St., Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2046
Facsimile: (215) 372-2344

Attorneys for Defendants

Dated: June 27, 2025

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION. ............................................................................................ 1

II.     STATEMENT OF UNDISPUTED FACTS. .................................................. 1

III.    ARGUMENT. ................................................................................................. 1

        A.      STANDARD OF REVIEW. ............................................................... 1

        B.      SUMMARY JUDGMENT SHOULD BE GRANTED TO
                DEFENDANTSAS TO PLAINTIFF'S QUID PRO QUO HARASSMENT
                CLAIMS. ............................................................................................ 2

        C.      THE COURT SHOULD GRANT SUMMARY JUDGMENT TO
                DEFENDANTS AS TO PLAINTIFF's RETALIATION CLAIMS. ................. 12

                1.      Plaintiff Cannot Show A Causal Connection Between Protected
                        Conduct And Her Letter Of Support ......................................... 13

                2.      Plaintiff Did Not Experience A Materially Adverse Employment
                        Action ......................................................................................... 15

        D.      THE COURT SHOULD GRANT SUMMARY JUDGMENT AS TO
                ANY ALLEGATIONS THAT POST-DATE PLAINTIFF'S PCHR
                COMPLAINT. .................................................................................... 17

        E.      TEMPLE UNIVERSITY SHOULD BE DISMISSED AS A
                DEFENDANT ..................................................................................... 21

IV.     CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adetuyi v. City & County of San Francisco*,
  63 F. Supp. 3d 1073 (N.D. Cal. 2014) ...................................................................20

*Ahern v. EResearch Tech, Inc.*,
  183 F. Supp. 3d 663 (E.D. Pa. 2016) .......................................................................3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................................2

*Anselmo v. City of Phila.*,
  No. 18-5160, 2021 U.S. Dist. LEXIS 18176 (E.D. Pa. Jan. 29, 2021) ............15, 17

*Ashton v. SCI-Fayette Pa. Dep't of Corr.*,
  No. 16-1795, 2018 U.S. Dist. LEXIS 98736, 2018 WL 2966849 (W.D. Pa.
  June 13, 2018) ..........................................................................................................18

*Barton v. Mikelhayes*,
  No. 09-CV-00063, 2010 U.S. Dist. LEXIS 23789 (N.D.N.Y. Mar. 15, 2010) .......20

*Bonenberger v. Plymouth Twp.*,
  132 F.3d 20 (3d Cir. 1997) .........................................................................................3

*Bowles v. Romulus Inc.*,
  No. CV-15-00077, 2016 U.S. Dist. LEXIS 6540 (D. Ariz. Jan. 20, 2016) .............21

*Burlington Indus., Inc. v. Ellerth*,
  524 U.S. 742 (1998) ......................................................................................3, 10, 11

*Burlington N. & S.F. Ry. v. White*,
  548 U.S. 53 (2006) .........................................................................................12, 13, 14, 15

*Canada v. Samuel Grossi & Sons, Inc.*,
  49 F.4th 340 (3d Cir. 2022) ..............................................................................12, 15

*Caver v. City of Trenton*,
  420 F.3d 243 (3d Cir. 2005) .....................................................................................15

*Community for Creative Non-Violence v. Reid*,
  490 U.S. 730, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989) ......................................22

*Daniels v. School Dist. of Philadelphia*,
  776 F.3d 181 (3d Cir. 2015) ...............................................................................12, 13

LEGAL\78461452\2

*De Jesus v. Lehigh Valley Hosp., Inc.*,
    No. 24-5118, 2025 U.S. Dist. LEXIS 52704 (E.D. Pa. Mar. 21, 2025) ................................ 9

*Ellison v. Brady*,
    924 F.2d 872 (9th Cir. 1991) ................................................................................................. 21

*Faush v. Tuesday Morning, Inc.*,
    808 F.3d 208 (3d Cir. 2015) .................................................................................................. 22

*Fields v. Am. Airlines, Inc.*,
    696 F. Supp. 3d 66 (E.D. Pa. 2023) ...................................................................................... 18

*Fincher v. Depository Trust & Cleaning Corp.*,
    604 F.3d 712 (2d Cir. 2010) .................................................................................................. 19

*Fort Bend Cnty., Tex. v. Davis*,
    587 U.S. 541 (2019) ............................................................................................................... 18

*Gaudette v. Angel Heart Hospice, L.L.C.*,
    No. 24-50523, 2025 U.S. App. LEXIS 11945 (5th Cir. May 16, 2025) ................................ 19

*Hamilton v. St. Joseph's Med. Cntr.*,
    No. S-12-2817, 2014 U.S. Dist. LEXIS 81017 (E.D. Cal. June 12, 2014) ............................ 20

*Hare v. Potter*,
    220 F. App'x 120 (3d Cir. 2007) ........................................................................................... 18

*Heredia-Caines v. Lehigh Valley Hosp., Inc.*,
    580 F. Supp 3d 114 (E.D. Pa. 2022) ..................................................................................... 16

*Hurley v. Atlantic City Police Dep't*,
    174 F.3d 95 (3d Cir. 1999) ...................................................................................................... 3

*Johnson v. Bath Saver*,
    No. 06-5018, 2008 U.S. Dist. LEXIS 17285 (D.N.J. Mar. 6, 2008) ....................................... 9

*Jones v. Se. Pa. Transp. Auth.*,
    796 F.3d 323 (3d Cir. 2015) .................................................................................................. 17

*Jones v. United Parcel Serv.*,
    214 F.3d 402 (3d Cir. 2000) .................................................................................................. 24

*Joseph v. Cont'l Airlines, Inc.*,
    126 F. Supp. 2d 373 (E.D. Pa. 2000) ...................................................................................... 3

*Knabe v. Boury Corp.*,
    114 F.3d 407 (3d Cir. 1997) .................................................................................................. 21

iii

*Kostantopoulous v. Westvaco Corp.*,
112 F.3d 710 (3d Cir. 1997)...........................................................................................21

*Lexington Ins. Co. v. Western Pennsylvania Hosp.*,
423 F.3d 318 (3d Cir. 2005)..............................................................................................9

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)........................................................................................................12

*McGreevy v. Stroup*,
413 F.3d 359 (3d Cir. 2005)..............................................................................................2

*Melrose, Inc. v. Pittsburgh*,
613 F.3d 380 (3d Cir. 2010)..............................................................................................1

*Mondzelewski v. Pathmark Stores, Inc.*,
162 F.3d 778 (3d Cir. 1998)............................................................................................16

*Mouzone v. Univ. of Pennsylvania Health Sys.*,
No. 23-cv-19, 2023 WL 7167565 (E.D. Pa. Oct. 31, 2023) ....................................18

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)..........................................................................................13, 15, 16

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)........................................................................................................18

*Nationwide Mutual Insurance Co. v. Darden*,
503 U.S. 318, 112 S. Ct. 1344, 117 L. Ed. 2d (1992)..................................................22

*Pakdel v. City and Cnty. of S.F., Cal.*,
594 U.S. 474 (2021)........................................................................................................18

*Purnell v. City of Philadelphia*,
No. 20-cv-3718, 2021 U.S. Dist. LEXIS 153493, 2021 WL 3617161 (E.D. Pa.
Aug. 16, 2021) ..............................................................................................................12

*Ridgewood Bd. of Educ. V. N.E. ex rel. M.E.*,
172 F.3d 238 (3d Cir. 1999)..............................................................................................2

*Robinson v. City of Pittsburgh*,
120 F.3d 1286 (3d Cir. 1997)..........................................................................................15

*Ruehl v. Viacom, Inc.*,
500 F.3d 375 (3d Cir. 2007)..............................................................................................2

*Savage v. Temple Univ.*,
No. 19-6026-KSM, 2022 U.S. Dist. LEXIS 57175 (E.D. Pa. Mar. 29, 2022) ...........17, 23, 24

iv

*Schoch v. First Fid. Bancorporation*,
  912 F.2d 654 (3d Cir. 1990) ...................................................................24

*Scott v. Sunoco Logistics Partners*,
  918 F. Supp. 2d 344 (E.D. Pa. 2013) .......................................................18

*Starnes v. Butler Cnty. Court of Common Pleas*,
  971 F.3d 416 (3d Cir. 2020) ......................................................................3

*Swain v. City of Vineland*,
  457 F. App'x 107 (3d Cir. 2012) ..............................................................11

*Woodford v. Ngo*,
  548 U.S. 81 (2006) ....................................................................................18

*Yeager v. UPMC Horizon*,
  698 F. Supp. 2d 523 (W.D. Pa. 2010) ......................................................21

**Statutes**

42 U.S.C. § 2000e-5(e)(1), (f)(1) ..................................................................18

42 U.S.C. § 2000e(f) ......................................................................................21

Civil Rights Act of 1964 Title VII ..........................................................*passim*

Pennsylvania Human Relations Act ...............................................................17

Phila. Code § 9-1103(1)(h) .............................................................................22

Philadelphia Fair Practices Ordinance .....................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................1

Fed. R. Civ. P. 56(c)(1)(A) ...............................................................................2

Rule 56 ...............................................................................................................2

LEGAL\78461452\2

I. **INTRODUCTION.**

With the Court having dismissed the hostile work environment claims of Plaintiff Alana

M. O'Reilly, Ph.D. ("Plaintiff" or "O'Reilly"), her remaining claims of quid pro quo harassment

and retaliation hinge on demonstrated falsehood.[1]  Plaintiff's operative assertion – dispositive of

both of her remaining claims – is that Jonathan Chernoff, M.D., Ph.D. ("Dr. Chernoff") denied

Plaintiff's request for an institutional Letter of Support for her application for an external grant.

With discovery now complete, there is no genuine issue of material fact that Dr. Chernoff twice

approved this Letter of Support.  As a consequence, and for the additional reasons explained

herein, Defendants, The Institute for Cancer Research d/b/a The Research Institute of  Fox Chase

Cancer Center ("FCCC"), Temple University Health System ("TUHS"), Temple University and

Dr. Chernoff are entitled to summary judgment and the dismissal of this case in its entirety.  In

the event that any aspect of Plaintiff's remaining claims survives summary judgment, the Court

should, nonetheless, grant summary judgment to and dismiss Temple University as a defendant

in this case.

II. **STATEMENT OF UNDISPUTED FACTS.**

Defendants have filed herewith a Statement of Undisputed Material Facts ("SUMF"),

which Defendants incorporate by reference as if fully set forth herein.

III. **ARGUMENT.**

A. **STANDARD OF REVIEW.**

Summary judgment is appropriate when there is no genuine issue of fact and the moving

---

[1] Plaintiff's hostile work environment claims under Title VII of the Civil Rights Act of 1964
("Title VII") and the Philadelphia Fair Practices Ordinance ("PFPO") have been dismissed by
Memorandum Opinion and Order dated May 29, 2025 granting in part Defendants' Partial
Motion to Dismiss Plaintiff's Complaint.  ECF Nos. 38-39.

party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)).  Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  Material facts are those that will affect the outcome of the trial under governing law.  *Anderson*, 477 U.S. at 248.

After the moving party has met its initial burden, the adverse party's response must, "by citing to particular parts of materials in the record," set out specific facts showing a genuine issue for trial.  FED. R. CIV. P. 56(c)(1)(A).  Speculation and conclusory allegations do not satisfy the non-moving party's duty.  *Ridgewood Bd. of Educ. V. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).  Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party.  *Anderson*, 477 U.S. at 255.

### B.    SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS AS TO PLAINTIFF'S QUID PRO QUO HARASSMENT CLAIMS.

Defendants are entitled to summary judgment as to Plaintiff's quid pro quo harassment claims because:  (1) Dr. Chernoff (the undisputed decisionmaker) approved of Plaintiff's requests for a Letter of Support in March 2023 and August 2023; (2) the evidence compels the conclusion – and Plaintiff admits – that any objective impact of the Letter of Support on the prospects of her grant funding is speculation; and (3) Plaintiff's subjective perception of harm cannot sustain a finding of a tangible employment action.  For these reasons, the discovery record establishes that Plaintiff did not experience a tangible employment action as a matter of law, and that, even if she did, the record establishes that the person whom Plaintiff claims made the alleged offer or threat – *i.e.*, Dr. Chernoff – did not actually take the alleged tangible employment action.

For Plaintiff's claims of quid pro quo sexual harassment to survive summary judgment, Plaintiff must point to evidence of unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, and a showing that (1) submission to such conduct is made either explicitly or implicitly a term or condition her employment; or (2) submission to or rejection of such conduct was used as the basis for employment decisions affecting her. *Starnes v. Butler Cnty. Court of Common Pleas*, 971 F.3d 416, 427 (3d Cir. 2020) (quoting *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 27 (3d Cir. 1997)).[2]

Critically, Plaintiff must show that she experienced a "tangible employment action" as a result of her non-response to Dr. Chernoff's January 23, 2023 email. *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 133 (3d Cir. 1999). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Starnes*, 971 F.3d at 427. In contrast, a "bruised ego" is not enough. *Ellerth*, 524 U.S. at 761 (citation omitted).

The undisputed material facts are as follows. On January 23, 2023, Dr. Chernoff sent Plaintiff the following email:

> Dear Alana:
>
> Losing our friend Jeff, and then later hearing your words about him at your seminar last week, reminded me that we had a lot in common. It's been eight years, more or less, since we've spoken. I wonder, after all that time, whether we might begin to work together again.
>
> As you may know, the education sections of the core grant write-up have become more prominent with each cycle, and your work in

---

[2] Plaintiff's PFPO claims are analyzed using the same standards as her Title VII claims. *See, e.g.*, *Ahern v. EResearch Tech, Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016) (citing *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000)).

this area has been exemplary.  I'm not sure if we ever spoke of
this, but my grandfather and mother both devoted their lives to
teaching and though I myself did not take that path, my interests in
this area are authentic and deep-rooted.  The sections on education
are a potential strength for us in the write-up, as we have some real
accomplishments to describe.  In the narrative, my intent is to
weave in three elements – education, outreach, and diversity – that
we have not emphasized enough previously.  I've asked everyone
involved with the composition of the core grant to keep these three
crucial ideas in mind as we pivot from the Fox Chase of the past
into something better.  If you are willing, I'd like you to serve as a
reviewer and editor for various sections as they are drafted, with
the particular task of harmonizing the descriptions of our research
efforts with our educational imperative.

Best Wishes,

Jon

SUMF ¶ 33.

TUHS CEO, Michael Young, had promoted Dr. Chernoff to FCCC Cancer Center

Director in November 2021 after relieving Dr. Chernoff's predecessor of his duties.  Mr. Young

relieved Dr. Chernoff's predecessor of his duties because, under his leadership, the National

Cancer Institute ("NCI") issued FCCC a "No-Cost Extension" of its Cancer Center Support

Grant ("CCSG" or "Core Grant") and required FCCC to reapply for the Core Grant, creating

significant uncertainty about FCCC's prospects of retaining the NCI Comprehensive Cancer

Center Designation.  SUMF ¶¶ 23-26.[3]  Plaintiff admits that the Core Grant is an "essential

focus" of FCCC; without it, FCCC would be unable to attract patients and faculty.  SUMF ¶ 25.

There is no dispute that Mr. Young promoted Dr. Chernoff because there was a need for an

internal candidate in order to quickly begin working on this Core Grant resubmission.  SUMF ¶

---

[3] FCCC is one of approximately 55 NCI-designated Comprehensive Cancer Centers in the United
States, which signifies that FCCC does high-quality research, patient care and cancer prevention.
SUMF ¶ 2.

26.

In addition to the criticality of the Core Grant, Plaintiff admits that much of what Dr. Chernoff wrote in his email was true or accurate.  Specifically, Plaintiff does not dispute the following:  (1) "the education sections of the core grant write-up have become more prominent with each cycle, and your work in this area has been exemplary"; and (2) "The sections on education are a potential strength for us in the write-up, as we have some real accomplishments to describe."  SUMF ¶ 37.

Over a year before Dr. Chernoff sent the January 23, 2023 email in question, he consulted Fay Trachtenberg, Esq. for approval to communicate with Plaintiff regarding assistance with the Core Grant.  SUMF ¶¶ 27-29.  Ms. Trachtenberg is an employment lawyer who worked in the Legal Department of Temple University from approximately January 2006 until her voluntary separation in February 2023; she provided services to FCCC following TUHS' acquisition of FCCC, including the investigation of Plaintiff's 2014 complaint about Dr. Chernoff.  SUMF ¶ 21.  In response to Dr. Chernoff's January 2022 email to her, Ms. Trachtenberg advised Dr. Chernoff, in relevant part, "Given your new position and the oversight of [Plaintiff's] program, it makes perfect sense to reach out and get the information you need to do your job thoroughly."  SUMF ¶ 30.

Plaintiff did not respond to Dr. Chernoff's January 23, 2023 email.  On or about January 25, 2023, Plaintiff complained to David Wiest, Ph.D. (FCCC's Chief Scientific Officer) and Erica Golemis, Ph.D., another manager who had been completing Plaintiff's performance evaluations for several years after Plaintiff transferred into the academic program she led. SUMF ¶¶ 39-40.  Although neither Dr. Wiest nor Dr. Golemis believed that Plaintiff was making a complaint of discrimination, Dr. Wiest told Plaintiff during their January 25, 2023 meeting that

he would speak with Dr. Chernoff immediately.  SUMF ¶ 41.

Thereafter, Dr. Wiest spoke with Dr. Chernoff about Plaintiff's complaint.  SUMF ¶ 42.
During this discussion, Dr. Wiest and Dr. Chernoff discussed Dr. Chernoff's January 23, 2023
email request for Plaintiff to work on the Core Grant.  *Id*.  The outcome of this discussion was
that Dr. Chernoff "would be dropping the matter."  *Id*.  There is no evidence that Dr. Chernoff
has communicated with Plaintiff since this discussion.

More than two months later, on March 25, 2023, Dr. Chernoff <u>first</u> approved Plaintiff's
request for an institutional Letter of Support in connection with a National Institutes of Health
grant called a Research With Activities Related to Diversity ("ReWARD") Grant ("Letter of
Support").  SUMF ¶ 43.  Plaintiff had responded to an email from Dr. Wiest circulating NIH
grant opportunities to FCCC research professors in which Plaintiff wrote, in pertinent part, "**I'm
sending to you because it requires significant institutional commitment** . . . .  Given my
current lack of funding and high interest in community and DEI projects, this might really be
ideal.  Thoughts?"  SUMF ¶ 44.  The ReWARD Grant opportunity had numerous funding cycles,
and each funding cycle had a posted submission date including at least June 2023, October 2023,
February 2024 and June 2024.  SUMF ¶ 67.  The program announcement linked in Dr. Wiest's
email presumed a "set aside" budget for each funding cycle, meaning that adequate NIH funds
existed to fund meritorious grant submissions submitted during each cycle.  SUMF ¶ 72.

The vast majority of NIH grant submissions are not successful, especially on the initial
submission.  SUMF ¶ 8 ("It's – actually, when I (Plaintiff) got my first grant on the first
submission, I was told by another faculty member it was a 1 in 10 million chance.").  With
respect to the NIH grant process, "study sections" comprised of peer scientists review NIH grant
applications, provide written critiques and give the applications scores that determine whether

6

the grant applications are approved and funded. SUMF ¶ 7. NIH grant applications commonly require institutional letters of support, which demonstrate sufficient institutional resources to allow the investigator to be able to carry out the themes of the grant. SUMF ¶ 9. Some institutional letters of support require that FCCC commit additional resources, as Plaintiff suggested in her email to Dr. Wiest. SUMF ¶¶ 10, 44.

Prior to Dr. Chernoff's March 25, 2023 email approval, Dr. Wiest communicated with him about Plaintiff's request via email because, based on Plaintiff's email comment, he believed that FCCC's support of Plaintiff's ReWARD Grant application would have required FCCC to commit additional financial resources, which required Dr. Chernoff's approval. SUMF ¶ 46. Sometime prior to March 23, 2023, Dr. Wiest claims that Dr. Chernoff told him that there were "other initiatives that were of a higher priority." SUMF ¶ 49. Dr. Wiest did not see Dr. Chernoff's March 25, 2023 email approving Plaintiff's request for a Letter of Support; had Dr. Wiest seen this email, he would have moved forward with the Letter of Support. SUMF ¶ 53.

After Plaintiff did not submit by the June 2023 ReWARD Grant submission date, on August 11, 2023, she sent an email request for the Letter of Support to Dr. Wiest, who again, in turn, forwarded that email to Dr. Chernoff. SUMF ¶¶ 60-61. Dr. Chernoff responded to Dr. Wiest's August 11, 2023 email within a few minutes, writing, "Fine with me." SUMF ¶ 62. Dr. Wiest, that same day, both asked Camille Ragin, Ph.D. (then FCCC's Associate Director for DEIA), to assist with the preparation of the Letter of Support and also responded to Plaintiff's email by writing, in relevant part, "I looked through what needs to be in the letter and I think I'll need help from Camille on [specifics] here since some of this is in her wheelhouse ..but I'll reachout [sic] to her for help." SUMF ¶¶ 63-64. Both Dr. Wiest and Dr. Ragin understood as of August 11, 2023 that Dr. Ragin would be assisting with Plaintiff's Letter of Support. SUMF ¶

66.

Plaintiff received the Letter of Support in September 2023 and submitted her ReWARD Grant application by the October 5, 2023 submission date.  SUMF ¶ 68.  Plaintiff's October 2023 ReWARD Grant submission was not funded, and Plaintiff re-submitted for the ReWARD Grant in June 2024 which also was not funded.  SUMF ¶ 69.  As to why NIH did not fund Plaintiff's ReWARD Grant submissions, Plaintiff was told, in summary, "they didn't think low-income Philadelphia high school students could contribute productively to research."  SUMF ¶ 70. Plaintiff's second (June 2024) ReWARD Grant submission received a lower score than her first submission in October 2023.  SUMF ¶ 71.  Despite the same, NIH funded more than twice as many ReWARD Grant submissions made in advance of the June 2024 submission date as compared to the submissions made by the October 2023 submission date.  SUMF ¶ 73.

In view of these undisputed facts, Plaintiff cannot show that she experienced a tangible employment action as a result of her non-response to Dr. Chernoff's January 23, 2023 email request for assistance with the Core Grant.  First, Dr. Chernoff twice approved Plaintiff's request for a Letter of Support.  Consequently, even if Plaintiff establishes that Dr. Chernoff's January 23, 2023 email was based on sex (and Defendants maintain that it was not), she nonetheless cannot establish that her refusal to respond to this email was the "basis" for any tangible employment action against her.  Dr. Wiest testified that, had he seen Dr. Chernoff's March 25, 2023 email, he would have moved forward with the Letter of Support.  SUMF ¶ 53.  When Dr. Chernoff received Dr. Wiest's email in August 2023 about Plaintiff's second request, Dr. Chernoff quickly responded with his approval.  SUMF ¶ 62 ("Fine with me.").  Had Dr. Chernoff actually intended to deny Plaintiff a Letter of Support, there would be no reason for him to twice provide his written approval.

8

At the same time, there also is no evidence that Dr. Wiest harbored any animus toward Plaintiff with regard to Dr. Chernoff's January 23, 2023 email request that Plaintiff provide assistance with the Core Grant application.  The record compels the opposite conclusion:  there is no dispute that, after Plaintiff complained about this email, Dr. Wiest spoke with Dr. Chernoff about Plaintiff's complaint and that Dr. Chernoff agreed that he would be "dropping the matter." SUMF ¶ 42.  Against the backdrop of Dr. Chernoff's March 25, 2023 and August 11, 2023 approval emails, Plaintiff cannot show that her non-receipt of the Letter of Support was motivated by Dr. Chernoff's January 23, 2023 email to her about the Core Grant. Rather, the record compels the conclusion that the non-provision of a Letter of Support in March 2023 resulted from a mistake that cannot form the basis of an intentional discrimination claim. *C.f. De Jesus v. Lehigh Valley Hosp., Inc.*, No. 24-5118, 2025 U.S. Dist. LEXIS 52704, at *13 (E.D. Pa. Mar. 21, 2025) ("Again, there is nothing in this allegation which can lead to any inference whatsoever that the mistake was based in intentional discrimination."); *see also Johnson v. Bath Saver*, No. 06-5018, 2008 U.S. Dist. LEXIS 17285, at *13-14 (D.N.J. Mar. 6, 2008) (finding no intentional discrimination because "Plaintiff can point to no evidence that McGee's failure to live up to his commitment was a result of intentional discrimination as opposed to a simple mistake").

Second, even if Plaintiff overcomes that hurdle, the alleged denial of the Letter of Support was not a tangible employment action because Plaintiff admits that its impact on her prospects of grant funding is "speculation" and she must show something more than subjectivity to survive summary judgment.  *See Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'").  During her

9

deposition, when asked what harm she experienced as a result of not receiving the Letter of Support, Plaintiff testified that, had she been able to apply by the June 2023 submission date, "the grant could have potentially been funded" but that "**[a]ll of this is, obviously, speculation**." SUMF ¶ 57.

The admittedly speculative nature of Plaintiff's claimed tangible harm in this case finds substantial further support in the expert report of David T. Curiel, M.D., Ph.D. ("Curiel Report"), which explains that the timing of Plaintiff's ReWARD Grant submission had no impact on the prospects of the same being funded by NIH. As noted above, NIH did not fund either Plaintiff's October 2023 or her June 2024 submissions because, according to Plaintiff, "they didn't think low-income Philadelphia high school students could contribute productively to research." SUMF ¶ 70. That fact, of course, does not change regardless of which funding cycle Plaintiff chose for her application. Despite the opportunity to improve the grant submission prior to June 2024, she received a worse score. SUMF ¶ 71. Dr. Curiel opines:

> In summary, in my opinion, based on my experience and analysis of the materials presented in this case, the timing of Plaintiff's applications for the ReWARD Grant funding mechanism had no impact on the prospects of the same being funded. Had Plaintiff submitted by the June 2023 deadline, her score very likely would have been the same as her October 2023 submission. Her demonstrated inability to improve upon her initial submission when she re-submitted in 2024 provides further support for the conclusion that, regardless of when Plaintiff submitted her application, it would not have been funded.

SUMF ¶ 74.

Finally, the only other harm that Plaintiff claims resulted from her non-receipt of the Letter of Support in response to her March 2023 request amounts to a "bruised ego," which the U.S. Supreme Court has held does not constitute a tangible employment action. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Specifically, during her deposition, Plaintiff

testified, "[t]he denial of the letter of support harmed me so dramatically because it was a decision on the part of the leadership team that they were not going to support my science." SUMF ¶ 59.  Not only does this amount to Plaintiff's subjective perception (*i.e.*, not a tangible employment action), but it finds no record support given that Dr. Chernoff in fact supported Plaintiff's Letter of Support.  As such, what Plaintiff claims as harm constitutes nothing more than an unfounded fear based on speculation.

At the same time, Plaintiff also has no evidence that the timing of her ReWARD Grant application had any negative impact of her standing at FCCC.  While Plaintiff's Complaint purports to set her ReWARD Grant Letter of Support allegations against the backdrop of the requirement that she support fifty percent of her salary and benefits, there is no evidence that TUHS or FCCC took any action against her based on her not obtaining funding for her ReWARD Grant submissions.  Plaintiff admits she did not need the Letter of Support to remain employed, which further undercuts her assertion of tangible harm.  SUMF ¶ 56.  The only conclusion to be drawn from this record is that Plaintiff remains in exactly the same academic, financial and professional standing at FCCC today as she did before March 2023.

Given the foregoing, Plaintiff's quid pro quo harassment claim relies on nothing but Plaintiff's assertion of subjective harm.  The Third Circuit has held that subjective harm does not rise to the level of an adverse employment action under *Ellerth*.  For example, in *Swain v. City of Vineland*, 457 F. App'x 107 (3d Cir. 2012), the Third Circuit affirmed summary judgment in favor of employer where the evidence established that the plaintiff, a police officer, could not show any change to his compensation, benefits or prestige.  In that case, the plaintiff was denied a K-9 officer position, which he claimed was a "specialized endeavor with opportunities for career advancement and overtime."  *Id.* a 110.  The Third Circuit found that "Swain relies only

11

upon his subjective preference for the K-9 position, which is insufficient to establish an adverse employment action." *Id.* (citation omitted).

In sum, the Court should grant summary judgment in favor of Defendants as to Plaintiff's quid pro quo harassment claims because: (1) Dr. Chernoff (the undisputed decisionmaker) approved of Plaintiff's Letter of Support in March 2023 and August 2023; (2) the evidence compels the conclusion – and Plaintiff admits – that any impact on the prospects of her grant funding is speculation; and (3) Plaintiff's subjective perception of harm cannot sustain a finding of a tangible employment action.

## C.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS AS TO PLAINTIFF'S RETALIATION CLAIMS.

For similar reasons, the Court should also grant summary judgment to Defendants as to Plaintiff's Title VII and PFPO retaliation claims. These claims are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (applying framework to Title VII claim); *Purnell v. City of Philadelphia*, No. 20-cv-3718, 2021 U.S. Dist. LEXIS 153493, 2021 WL 3617161, at *2 n.2 (E.D. Pa. Aug. 16, 2021) (applying same analysis to corresponding PFPO claims) (citation omitted). Under the first step of this framework, Plaintiff bears the burden of stating a *prima facie* case of retaliation by establishing that: (1) she engaged in a protected activity; (2) FCCC took some adverse action against her, either after or contemporaneous with the protected activity; and, (3) there was a causal connection between the protected activity and the adverse action. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022).

To satisfy the second prong of her *prima facie* case of retaliation, Plaintiff "must show that that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *White*, 548 U.S. at 68).[4] The Third Circuit examines the challenged conduct "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Daniels*, 776 F.3d at 195 (quoting *White*, 548 U.S. at 71). "[P]etty slights, minor annoyances, and simple lack of good manners" generally will not suffice. *Daniels*, 776 F.3d at 196 (quoting *White*, 548 U.S. at 71).

The factual record compels the conclusion that Plaintiff cannot establish a *prima facie* case of retaliation and the entry of summary judgment to Defendants on Plaintiff's retaliation claims for two main reasons. First, Plaintiff cannot establish a causal connection between any alleged protected conduct and her Letter of Support. Second, even if she could, her non-receipt of the Letter of Support at the time she first requested it was not a materially adverse employment action.

### 1.    Plaintiff Cannot Show A Causal Connection Between Protected Conduct And Her Letter Of Support.

Because the undisputed facts include that Dr. Chernoff twice approved Plaintiff's Letter of Support and that her non-receipt of the Letter of Support in response to her March 2023 request resulted from a mistake, Plaintiff cannot establish the requisite causal connection to avoid summary judgment on her retaliation claims. As detailed above and in Defendants' SUMF, Dr. Chernoff made the decision to approve Plaintiff's Letter of Support as communicated

---

[4] The U.S. Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) contrasted the higher standard for retaliation claims with the anti-discrimination provisions of Title VII, noting that the retaliation standard was "meant to capture those (and only those) employer actions serious enough to 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 357 (quoting *White*, 548 U.S. at 68). "If an action causes less serious harm, the Court reasoned, it will not deter Title VII enforcement; and if it will not deter Title VII enforcement, it falls outside the purposes of the ban on retaliation." *Muldrow*, 601 U.S. at 357 (citation omitted).

LEGAL\78461452\2

in an email to Dr. Wiest on March 25, 2023.  SUMF ¶¶ 43, 52.  Had Dr. Wiest seen this email, he would have moved forward with the Letter of Support.  SUMF ¶ 53.  Following his March 25 email, Dr. Chernoff believed that a Letter of Support had been provided and that Plaintiff had submitted her ReWARD Grant application.  SUMF ¶ 55.  As such, in order to establish a causal connection between protected conduct and her March 2023 request, Plaintiff must point to some record evidence of a connection to Dr. Wiest's mistake.

Plaintiff has no such evidence.  On the contrary, it is undisputed that, during Plaintiff's January 25, 2023 meeting with Drs. Wiest and Golemis, Dr. Wiest told Plaintiff that he would speak with Dr. Chernoff about and that Dr. Wiest subsequently did so.  SUMF ¶¶ 41-42. Moreover, when Plaintiff contacted Dr. Wiest about the Letter of Support in March 2023, Dr. Wiest expeditiously asked Dr. Chernoff for guidance that same day.  SUMF ¶ 45.  Two days later, Dr. Wiest followed up with Dr. Chernoff again to inquire.  SUMF ¶ 48 ("Hi – been a couple days… thoughts?").  Far from evidencing any retaliatory animus, the record shows that Dr. Wiest both took Plaintiff's complaint seriously enough to speak with Dr. Chernoff and attempted to move her Letter of Support to a decision by Dr. Chernoff.  As such, Plaintiff cannot show that Dr. Wiest intended to harm her as a result of her January 25, 2023 complaint.

Critically, Dr. Chernoff approved Plaintiff's Letter of Support again on or about August 11, 2023 within a few minutes of Dr. Wiest's email request forwarding another email from Plaintiff.  SUMF ¶ 62 ("Fine with me.").  Plaintiff did not file her PCHR Complaint until August 31, 2023 (SUMF ¶ 75) and there is no evidence that Defendants had notice of the same before that date.  Thus, Plaintiff's contention that she "was forced to file formal legal proceedings" in order to receive a Letter of Support lacks merit.  Plaintiff therefore cannot establish a causal connection between her PCHR Complaint and her Letter of Support for the additional reason that

14

her protected conduct occurred **<u>after</u>** the decision to provide it was made, not "after or contemporaneous with the protected activity." *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022).

For the foregoing reasons, Plaintiff cannot establish a causal connection between any protected activity and Letter of Support.  The Court should, accordingly, grant summary judgment to Defendants on Plaintiff's retaliation claims.

> **2.**    **Plaintiff Did Not Experience A Materially Adverse Employment Action.**

For purposes of Plaintiff's retaliation claims, adverse employment actions are those material enough to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & S.F. Ry. v. White*, 548 U.S. 53, 68 (2006).  Importantly, the materially adverse employment action standard is objective in that it asks what a 'reasonable employee' would believe.  *Id.* at 69; *see also Anselmo v. City of Phila.*, No. 18-5160, 2021 U.S. Dist. LEXIS 18176, at *29 (E.D. Pa. Jan. 29, 2021) ("This is an objective standard which is judicially administrable.") (citing *White*, 548 U.S. at 68).

Retaliatory conduct "must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).  "As such, in cases not involving actual discharge . . . courts may find unlawful retaliatory conduct 'only if it alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Caver*, 420 F.3d at 255 (quoting *Robinson*, 120 F.3d at 1300); *see also Muldrow v. City of St. Louis*, 601 U.S. 346, 357 (2024) (stating that *White* test "meant to capture those (and only those) employer actions serious enough to "dissuade[ ] a

15

reasonable worker from making or supporting a charge of discrimination . . .  If an action causes less serious harm, the [*White*] Court reasoned, it will not deter Title VII enforcement; and if it will not deter Title VII enforcement, it falls outside the purposes of the ban on retaliation.") (citation omitted).

Applying these legal standards, the record compels the conclusion that, for the same reasons that Plaintiff did not experience "tangible" employment action for purposes of her quid pro quo harassment claims, she also did not experience conduct that would satisfy the higher standard of a materially adverse employment action that would support her retaliation claims. *See Muldrow*, 601 U.S. at 357.  As such, Defendants incorporate their arguments in Section III.B, *supra*, as to why Plaintiff cannot establish that she experienced a tangible employment action for purposes of her quid pro quo harassment claims as if the same were fully set forth herein.

Pertaining specifically to her retaliation claims, Plaintiff's subjective perception also does not give rise to a materially adverse employment action.  *See Heredia-Caines v. Lehigh Valley Hosp., Inc.*, 580 F. Supp 3d 114, 130 (E.D. Pa. 2022).  Indeed, the Third Circuit has found that "[i]f an individual's hypersensitivity causes him or her to suffer tangible psychological harm that a reasonable person would not suffer under similar circumstances, then that individual cannot seek protection from the . . . anti-retaliation provision."  *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 and n.5 (3d Cir. 1998) ("minor or trivial actions that merely make an employee 'unhappy' are not sufficient to qualify as retaliation . . . for otherwise every action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.") (citation omitted).

Viewed in this light, Plaintiff's disavowal of any objective harm other than her admitted

"speculation" that her grant submission "could potentially have been funded" should compel the conclusion that she has not established a material adverse employment action.  SUMF ¶ 57 ("All of this is, obviously, speculation.").  Plaintiff does not allege and cannot show that TUHS or FCCC took any adverse action against her as a result of the non-funding of her grant submissions.  At bottom, then, Plaintiff can show only subjective effects – and no objective effects – of the Letter of Support.  While "Plaintiff may have felt intimidated, belittled, and ostracized . . . the retaliation must be materially adverse from an objective perspective[.]" *Anselmo*, 2021 U.S. Dist. LEXIS 18176, at *38.  Plaintiff has not established that she experienced a materially adverse employment action and Defendants, consequently, are entitled to summary judgment on her retaliation claims for this additional reason.  *Id.*[5]

**D.    THE COURT SHOULD GRANT SUMMARY JUDGMENT AS TO ANY ALLEGATIONS THAT POST-DATE PLAINTIFF'S PCHR COMPLAINT.**

Plaintiff's Complaint has a section containing the words "Continuing Violation" (ECF No. 1 ¶¶ 98-109) with conclusory allegations of conduct occurring after she filed her PCHR Complaint:  "Even after Dr. O'Reilly filed her administrative complaint of discrimination and retaliation with the PCHR, Fox Chase, TUHS, and Temple refused to take her allegations seriously, and have taken no steps to correct the past violations of her civil rights or protect her from continued harassment and retaliation."  ECF No. 1 ¶ 99; *see also id.* ¶ 108 ("Defendants'

---

[5] Summary judgment also should be granted to Dr. Chernoff as to Plaintiff's PFPO aiding and abetting claim against him in his individual capacity in Count VII of her Complaint because there was no underlying PFPO violation by TUHS or FCCC.  *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015) ("[L]iability as an aide[r] and abett[or] under the [Pennsylvania Human Relations Act; "PHRA"] hinges on [the employer's] liability."); *see also Savage v. Temple Univ.*, No. 19-6026-KSM, 2022 U.S. Dist. LEXIS 57175, at *31 (E.D. Pa. Mar. 29, 2022) (Marston, J.) (analyzing aiding and abetting claims under both the PHRA and PFPO together without distinction).  In view of the undisputed facts, Plaintiff cannot show that Dr. Chernoff aided or abetted her non-receipt of a Letter of Support prior to June 2023.

continued refusal to take corrective action in response to Defendant Chernoff's illegal conduct towards Dr. O'Reilly and/or to facilitate her full participation as an Associate Professor constitute materially adverse actions that would discourage a reasonable worker from complaining about sex-based harassment and/or retaliation.").

To the extent that these conclusory allegations are considered "claims" in the Complaint, Defendants would be entitled to summary judgment on such putative claims for several reasons. First, they are not exhausted. The U.S. Supreme Court instructs that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Pakdel v. City and Cnty. of S.F., Cal.*, 594 U.S. 474, 479 (2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006)). As "a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission." *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 543 (2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)). PFPO claims also must be administratively exhausted before a party may pursue such claims in court. *See Mouzone v. Univ. of Pennsylvania Health Sys.*, No. 23-cv-19, 2023 WL 7167565, at *3 (E.D. Pa. Oct. 31, 2023).[6] Plaintiff has not administratively exhausted any post-PCHR Complaint allegations.

Second, as this Court has recognized, "'[c]ourts have held that the failure to investigate a plaintiff's complaint does not constitute an adverse employment action,' even in the retaliation context." *Fields v. Am. Airlines, Inc.*, 696 F. Supp. 3d 66, 105 (E.D. Pa. 2023) (Marston, J.) (quoting *Ashton v. SCI-Fayette Pa. Dep't of Corr.*, No. 16-1795, 2018 U.S. Dist. LEXIS 98736, 2018 WL 2966849, at *6 (W.D. Pa. June 13, 2018) (collecting cases) and citing *Hare v. Potter*,

---

[6] Because this Court has already dismissed Plaintiff's hostile work environment claims, the continuing violations doctrine does not apply to any discrete acts alleged by Plaintiff. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

220 F. App'x 120, 134 (3d Cir. 2007)); *see also Scott v. Sunoco Logistics Partners*, 918 F. Supp. 2d 344, 356 (E.D. Pa. 2013) ("a total failure to investigate is not an adverse employment action"); and *Fincher v. Depository Trust & Cleaning Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action"). Thus, Plaintiff cannot assert a claim based on any alleged failure to investigate the allegations in her PCHR Complaint.

Third, to the extent that Plaintiff asserts a claim that Defendants failed to "protect her from continued harassment and retaliation," such a claim also would fail. Initially, it bears emphasis that the Court has already concluded that Plaintiff did not experience a hostile work environment, and has, accordingly, dismissed all of Plaintiff's hostile work environment claims. ECF Nos. 38-39. More specifically, the Court concluded that Plaintiff's allegations do "not rise to the requisite level of severity or pervasiveness to plausibly allege a hostile work environment claim." *Id.* at 18. The Court found in this regard, "Dr. Chernoff's alleged conduct does not rise to the level of "permeating intimidation, ridicule, and insult[.]" *Id.* at 20. As such, Plaintiff may not assert any claim based on the assertion that Defendants failed to investigate or remedy a hostile work environment because the Court has concluded that, even assuming Plaintiff's factual allegations to be true, no such hostile work environment existed.

Fourth, although the Third Circuit does not appear to have decided this issue, other U.S. Courts of Appeal and district courts have held that Title VII does not provide a cause of action based on an alleged failure to protect an employee from future discrimination or retaliation. Rather, the requirement remains that an employee must establish an underlying claim of discrimination or retaliation. *See, e.g.*, *Gaudette v. Angel Heart Hospice, L.L.C.*, No. 24-50523, 2025 U.S. App. LEXIS 11945, at *6-7 (5th Cir. May 16, 2025) (finding that employer's alleged

failure to protect plaintiff from discrimination does not affect "terms, privileges or conditions of employment"); *Adetuyi v. City & County of San Francisco*, 63 F. Supp. 3d 1073, 1093 (N.D. Cal. 2014) ("no liability can arise from not preventing discrimination or retaliation that did not occur") (citing *Hamilton v. St. Joseph's Med. Cntr.*, No. S-12-2817, 2014 U.S. Dist. LEXIS 81017, at \*20 (E.D. Cal. June 12, 2014)) ("When there is no viable claim of discrimination, as here, there is no claim for failure to prevent discrimination."); and *Barton v. Mikelhayes*, No. 09-CV-00063, 2010 U.S. Dist. LEXIS 23789, at \*19-20 (N.D.N.Y. Mar. 15, 2010) (dismissing claim for failure to protect and/or investigate as indistinct from underlying discrimination claims).

Finally, to the extent that the Court considers any claim by Plaintiff as to allegations following the filing of her PCHR Complaint, the record fails to show any wrongdoing by TUHS or FCCC. The allegations upon which Plaintiff appears to predicate her claim of "retaliatory harassment" are that TUHS and FCCC did not ensure that Dr. Chernoff was excluded from a program meeting and aspects of a retreat in March and September 2024, respectively. SUMF ¶¶ 77-84. Yet the undisputed facts are that, in March 2024, Dr. Wiest extended an offer to Plaintiff that she could participate and present during a program meeting via Zoom. SUMF ¶ 79. Plaintiff's expressed concerns were that Dr. Chernoff "could be watching, taking pictures, recording video over Zoom," despite admitting that she had no factual basis for this belief. SUMF ¶¶ 80, 84. In September 2024, AVP of HR Strategy, Towanda Record, met with Plaintiff and offered to attend an FCCC retreat with Plaintiff so as to observe and address anything that were to occur. SUMF ¶ 82.

Plaintiff has no actionable claim based on these undisputed facts. First, at least one district court in the Third Circuit has found that the "mere presence" of an alleged harasser,

20

without more, may "not be found by a reasonable jury to prevent a reasonable employee from making a charge of discrimination." *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 546 (W.D. Pa. 2010).[7] Second, the undisputed facts compel the conclusion that TUHS and FCCC responded to Plaintiff's expressed concerns, however unfounded, in an attempt to facilitate her participation in the March and September 2024 events.  Even if Plaintiff were complaining of discrimination – which, as her concerns were about future, hypothetical conduct for which she admits she has no factual basis, she was not – then Plaintiff would be unable to assert a claim based on her preference for a difference response.  *C.f. Knabe v. Boury Corp.*, 114 F.3d 407, 414 (3d Cir. 1997) ("an employee cannot dictate that the employer select a certain remedial action.").

### E.    TEMPLE UNIVERSITY SHOULD BE DISMISSED AS A DEFENDANT.

Finally, Temple University cannot be found liable and should be dismissed as a defendant in this case.  In her Complaint, Plaintiff alleges that Temple University "is and was Dr. O'Reilly's employer within the meaning of Title VII and the PFPO" and that Temple University "aided and abetted the other Defendants' discrimination and retaliation against Dr. O'Reilly in violation of the PFPO[.]"  ECF No. 1, Pl. Compl. ¶¶ 14-15.  The only factual allegation specifically focused on Temple University in this regard is that, "Upon information and belief,

---

[7] While Defendants acknowledge case law standing for the proposition that, under certain circumstances, there mere presence of an alleged harasser can create a hostile work environment claim, these cases impose two requirements:  (1) an "particularly severe or pervasive" hostile work environment, which claim this Court has already rejected; and (2) evidence that the plaintiff reasonably believed that matters would escalate.  *See Kostantopoulous v. Westvaco Corp.*, 112 F.3d 710, 718 (3d Cir. 1997) (citing *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991); *see Bowles v. Romulus Inc.*, No. CV-15-00077, 2016 U.S. Dist. LEXIS 6540, at *10 (D. Ariz. Jan. 20, 2016) (rejecting "mere presence" argument under *Ellison* because plaintiff "had no reason to think that matters would escalate or that Guerro's mere presence would cause African American employees to feel unsafe or humiliated in the workplace.").  Because Plaintiff admits that she had no factual basis to believe that Dr. Chernoff would take photos of her or record her in 2024, and because the Court has dismissed Plaintiff's hostile work environment claims, this argument is foreclosed.  SUMF ¶ 84.

since his promotion to Cancer Center Director in 2021, Defendant Chernoff has reported to and has been supervised by representatives of TUHS and/or Temple." *Id.* ¶ 17.

Initially, there is no dispute that, at all times relevant, Dr. Chernoff has been an employee of FCCC and reported only to employees of FCCC and/or TUHS. SUMF ¶ 12. Prior to his 2021 promotion, Dr. Chernoff reported to FCCC's former Cancer Center Director, Richard Fisher, and since that time, Dr. Chernoff has reported to Michael Young, the CEO of TUHS. SUMF ¶ 14. As such, the record compels the conclusion that Dr. Chernoff did not report to and was not supervised by any Temple University employee.

Plaintiff also has no evidence that Temple University was her employer so as to potentially trigger Title VII liability. Under Title VII, an "employee" is defined as "an individual employed by an employer[.]" 42 U.S.C. § 2000e(f). In the Third Circuit, the common law test described in *Nationwide Mutual Insurance Co. v. Darden* determines whether an entity is an "employer" under Title VII. 503 U.S. 318, 323-24, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015) (applying the *Darden* test in Title VII cases).

"In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. at 323 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989)) (internal quotations omitted). The Third Circuit generally focuses on "which entity paid the employees' salaries, hired and fired them, and had control over their daily employment activities.'" *Faush*, 808 F.3d at 214 (internal quotation marks and alteration omitted).

Plaintiff was employed by FCCC (SUMF ¶ 11) and has no evidence that Temple

University paid her salary or had any control over her daily employment activities. In fact, Plaintiff produced documents showing that FCCC is her W-2 employer. SUMF ¶ 20. As such, Plaintiff cannot show that Temple University was her employer or agency employer under the *Darden* test.

Nor can Plaintiff establish an aiding and abetting claim against Temple University under the PFPO. Subsection 1103(1)(h) of the PFPO makes it unlawful:

> For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice.

Phila. Code § 9-1103(1)(h).

In addition to establishing an "underlying" violation of the PFPO by an employer, to prove an aiding and abetting claim, a plaintiff must establish "that the defendant knew about and either substantially assisted or encouraged the discrimination that the plaintiff experienced." *Savage v. Temple Univ.*, No. 19-6026-KSM, 2022 U.S. Dist. LEXIS 57175, at *31 (E.D. Pa. Mar. 29, 2022) (Marston, J.). In *Savage*, this Court granted summary judgment as to PFPO aiding and abetting claims against individual defendants because there was no evidence that they knew about or took part in the employment decisions at issue. *Id.* at *32. As such, the Court found no evidence that the individual defendants "assisted, let alone substantially assisted, the discriminatory conduct[.]" *Id.*

The same result should issue here. In her Complaint, Plaintiff avers that Temple University was involved in alleged decisions regarding: (1) whether to take any action regarding Dr. Chernoff in 2023; (2) Plaintiff's complaints about Dr. Chernoff in 2023; (3) Dr. Chernoff's 2021 promotion. ECF No. 1 ¶ 109(a). Plaintiff also avers that the "General Counsel for Fox

Chase reports to the Chief Counsel Officer for TUHS, who reports to and/or is considered part of the Temple's Office of University Counsel. *Id.* ¶ 109(b).[8] However, Temple University has attested to its lack of any knowledge of Plaintiff's operative allegations in the form of a Verified Answer with New Matter to her PCHR Complaint. SUMF ¶ 76. In this context, Plaintiff's Complaint allegations do not amount to evidence, and, consequently, cannot create a genuine issue of material fact. *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."); *see also Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) ("The non-moving party cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial.").

Plaintiff has no evidence that Temple University knew about, let alone substantially assisted TUHS or FCCC with respect to any aspect of her employment from 2023 to present. In fact, the only record evidence relating to any Temple University employee is that, in January 2022, Fay Trachtenberg, Esq. provided legal advice to Dr. Chernoff more than one year before he sent the January 23, 2023 email to Plaintiff requesting her assistance with the Core Grant application. SUMF ¶¶ 27-32. There is no record evidence that Ms. Trachtenberg had any knowledge of Plaintiff's allegations in 2023; in fact, Ms. Trachtenberg voluntarily left her Temple University employment in February 2023. SUMF ¶ 21. Therefore, Ms. Trachtenberg cannot serve as the basis for liability under an aiding and abetting theory. *Savage*, 2022 U.S. Dist. LEXIS 57175, at *31.

Because Plaintiff has no evidence upon which Temple University may be found liable as

---

[8] This allegation has nothing to do with which entity pays employees' salaries, hires and fires them and has control of their daily activities.

an employer or agency employer, or under an aiding and abetting theory, the Court should dismiss Temple University as a defendant in this case even in the event that any of Plaintiff's remaining claims survives summary judgment.

## IV.    <u>CONCLUSION.</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and enter summary judgment in their favor as to all remaining claims asserted in Plaintiff's Complaint.  In the alternative, to the extent that any aspect of Plaintiff's remaining claims survives summary judgment, then the Court should dismiss Temple University as a defendant in this case.

Respectfully submitted,

**Cozen O'Connor**

<u>/s/ Benjamin L. Shechtman</u>
Benjamin L. Shechtman
bshechtman@cozen.com
Elizabeth A. Malloy
emalloy@cozen.com
1650 Market St., Suite 2800
Philadelphia, PA  19103
Telephone:  (215) 665-2046
Facsimile:  (215) 372-2344

Dated:  June 27, 2025                 Attorneys for Defendants