IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALANA M. O'REILLY, Ph.D. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO.: 2:24-cv-05315-KSM |
| | : |
| | : |
| | : |
| THE INSTITUTE FOR CANCER | : |
| RESEARCH, TEMPLE UNIVERSITY | : JURY TRIAL DEMANDED |
| HEALTH SYSTEM, TEMPLE | : |
| UNIVERSITY, and JONATHAN | : |
| CHERNOFF, MD, Ph.D. | : |
| | : |
| Defendants. | : |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO ALL REMAINING CLAIMS**

Julie A. Uebler, Esquire
Attorney ID No. 71297
**UEBLER LAW LLC**
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
(484) 875-3186 (Voice)
(484) 875-9273 (Fax)
uebler@ueblerlaw.com

*Attorney for Plaintiff*
*Alana M. O'Reilly, Ph.D.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................... ii-iii

I.   INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................... 2

III. ARGUMENT ............................................................................................... 2

     A.   The Record Contains Plenty Of Evidence For A Reasonable Jury To Conclude
          That Defendants Subjected Plaintiff To Sex-Based Harassment By Denying Her
          Request For A Letter Of Support For Her Grant Application in 2023. .................2

     B.   The Record Contains Plenty Of Evidence For A Reasonable Jury To Conclude
          That Defendants Retaliated Against Plaintiff By Denying Her Request For A
          Letter Of Support For Her Grant Application in 2023.. ...........................................7

          1.   The Record Evidence Is More Than Enough For A Reasonable Jury To
               Conclude That Defendant Chernoff Denied Plaintiff's Request For A Letter Of
               Support *Because* She Had Complained About Him. .........................................8

          2.   A Reasonable Jury Could Easily Conclude That Plaintiff Experienced A
               Materially Adverse Action...............................................................................10

     C.   Plaintiff Is Entitled To Present Her Retaliatory Harassment Claim To The Jury
          This November...................................................................................................13

          1.   Plaintiff's Claim For Retaliatory Harassment Has Been Properly Exhausted. 14

          2.   The Record Contains Plenty Of Evidence For A Reasonable Jury To Conclude
               That Defendants Subjected Plaintiff To Retaliatory Harassment.. ...................15

     D.   The Record Contains Plenty Of Evidence For A Reasonable Jury To Conclude
          That Temple University Is A Proper Defendant In This Case..............................19

V.   CONCLUSION............................................................................................ 21

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                      <u>Page(s)</u>

<u>Abdurahman v. Prospect CCMC, LLC</u>,
    Civ. A. No. 20-3609 (E.D. Pa. Nov. 15, 2022) ........................................................ 13

<u>Alston v. Penn State Health</u>,
    2023 WL 5214071 (M.D. Pa. Aug. 14, 2023) ......................................................... 15

<u>Burlington Industries, Inc. v. Ellerth</u>,
    524 U.S.742 (1998) ......................................................................................... 3, 6, 12

<u>Burlington Northern and Santa Fe Ry Co. v. White</u>,
    548 U.S. 53 (2006) ..................................................................................... 10, 11, 12

<u>Equal Employment Opportunity Commission v. Geisinger Health, et al.</u>,
    2022 WL 10208553 (E.D. Pa. Oct. 17, 2022) .................................................... 19-20

<u>Fields v. American Airlines, Inc.</u>,
    696 F. Supp 3d 66 (E.D. Pa. 2023) ......................................................................... 16

<u>Hamilton v. Norristown State Hospital</u>,
    2024 WL 3623521 (E.D. Pa. Aug. 1, 2024) ........................................................... 16

<u>Lett v. Se. Pa Transp. Auth.</u>,
    Civ. A. No. 19-3170 (E.D. Pa. Nov. 26, 2021) ...................................................... 21

<u>Meritor Savings Bank, FSK v. Vinson</u>,
    477 U.S. 57 (1986) ..................................................................................................... 3

<u>Morrison v. Custom Processing Services, Inc.</u>,
    2023 WL 12091781 (E.D. Pa. Oct. 6, 2023) .......................................................... 14

<u>Muldrow v. City of St. Louis</u>,
    601 U.S. 346 (2024) ........................................................................................ 3, 11, 12

<u>Reeves v. Sanderson Plumbing Prods.</u>,
    530 U.S. 133 (2000) ................................................................................................... 6

Waiters v. Parsons,
   729 F.2d 233 (3d Cir. 1984)...................................................................... 14

Walters v. Shintech, Inc.,
   225 WL 918450 (M.D. La. Mar. 26, 2025) ............................................... 3

Williams v. Runyon,
   130 F.3d 568 (3d Cir. 1997)...................................................................... 15

**Statutes**                                                                                   **Page(s)**

42 U.S.C. § 2000e-2(a)(1)............................................................................ 2

**Other Authorities**                                                                          **Page(s)**

Philadelphia Fair Practices Ordinance
   Phila. Code § 9-1103(1) ........................................................... 2, 12, 20-21

I.    <u>INTRODUCTION</u>

After promoting Jonathan Chernoff to Director of its Fox Chase Cancer Center years after imposing significant discipline for his sexual harassment of a female subordinate, Temple and its affiliated entities enabled Dr. Chernoff's sex harassment and retaliation against the same award-winning female scientist in 2023. When Temple's illegal conduct put her job and career in jeopardy, Dr. Alana O'Reilly filed an administrative complaint asserting claims of discriminatory harassment and retaliation with the Philadelphia Commission on Human Relations ("PCHR"). In response, Temple leadership, including its in-house attorneys, made knowing misrepresentations to the PCHR to avoid having to discipline Dr. Chernoff for violating the terms of the prior corrective action and Dr. O'Reilly's civil rights because doing so might put its government research funding at risk. Through blatantly misleading legal filings and retaliatory harassment towards Dr. O'Reilly, Defendants expected Dr. O'Reilly to abandon her claims or just break from the pressure and quit. Nevertheless, she persisted.

In October 2024, Dr. O'Reilly filed this lawsuit to hold Temple, its affiliated entities, and Dr. Chernoff accountable for their knowing and willful violation of her civil rights and to deter them from engaging in such flagrant violations of other employees' civil rights. Despite the existence of plenty of record evidence to convince a reasonable jury to find in Dr. O'Reilly's favor in this case, Defendants have filed a frivolous Motion for Summary Judgment.

For the reasons set forth herein, Dr. O'Reilly respectfully asks this Court to deny Defendants' Motion, and allow this case to proceed to trial in November so that a jury can enforce and uphold the laws that these Defendants have deliberately disregarded for so long. Specifically, the evidence is more than sufficient for Dr. O'Reilly to present the following claims to the jury: (1) Defendants, including Dr. Chernoff in his individual capacity, subjected Dr.

O'Reilly to sex-based harassment by denying her request for an institutional letter of support because she refused Dr. Chernoff's attempts to engage in a relationship with her; (2) Defendants, including Dr. Chernoff in his individual capacity, retaliated against Dr. O'Reilly when they denied her request for an institutional letter of support because she accused Dr. Chernoff of sex-based harassment; and (3) Defendants, including Dr. Chernoff in his individual capacity, subjected Dr. O'Reilly to retaliatory harassment from the time she filed her administrative complaint with the PCHR in August 2023, through the filing of this lawsuit in October 2024.[1]

II.    STATEMENTS OF FACTS

For a full discussion of the record evidence in this case, and the ways in which the facts material to these claims are disputed, Plaintiff directs the Court to: Plaintiff's Responses to Defendants' Statement of Undisputed Material Facts ("Defendants' SUMF"); and Plaintiff's Statement of Additional Material Facts ("PSOF"), both of which accompany this Opposition.

III.    ARGUMENT

A.    The Record Contains Plenty Of Evidence For A Reasonable Jury To Conclude That Defendants Subjected Plaintiff To Sex-Based Harassment By Denying Her Request For A Letter Of Support For Her Grant Application in 2023.

The law forbids an employer from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's sex. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).[2] Sex-based harassment against an employee, including harassment that has been historically described as *quid pro quo* harassment or *hostile work environment* harassment, violates the law if certain requirements are met, including establishing a sufficient basis to hold the employer vicariously

---

[1] Dr. O'Reilly filed a second administrative complaint with the PCHR in January 2025, which addresses Defendants' on-going retaliatory harassment against her.
[2] Defendants acknowledge that the legal standards applicable to Plaintiff's claims under federal law are same as under the Philadelphia Fair Practices Ordinance.

liable for the actions of its harassing employees. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 751-754 (1998) (discussing sex harassment standards, including those established in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986)). The terms "quid pro quo" and "hostile work environment" harassment do not appear in the statutory text and serve primarily as a way to assist in evaluating whether an employer may be held vicariously liable for its supervisor's alleged harassment. Id. at 753-754. When a plaintiff proves that a "tangible employment action" resulted from a refusal to submit to a supervisor's sex-based demands, she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under the law. Id. In turn, the Ellerth court defined a "tangible employment action" as a "significant change" in the plaintiff's status or a decision causing a "significant change" in benefits. Id. at 761.[3]

In her Complaint, Dr. O'Reilly alleged that Defendants' denial of her request for an institutional letter of support for a grant application (the "ReWARD grant") in March 2023 constituted a tangible employment action resulting from her rejection of Defendant Chernoff's

---

[3] As discussed more fully in the section relating to the retaliation claim, Plaintiff notes that it is possible that the Supreme Court's decision in Muldrow v. City of St. Louis, 601 U.S. 346 (2024), may be interpreted by the Court of Appeals for the Third Circuit to broaden the scope of actions that will constitute "tangible employment actions" sufficient to establish employer liability for sex-based harassment. Although Plaintiff has not found any cases on point within this jurisdiction, at least one court to consider the issue found that the more lenient standard from Muldrow (that is, discrimination may be found where an employment action adversely impacts a term or condition of employment regardless of whether it is "significant") should apply to the analysis of whether an employer's action is a "tangible employment action" for purposes of imposing per se employer liability for sex-based harassment. See Walters v. Shintech, Inc., 2025 WL 918450 (M.D. La. Mar. 26, 2025) (court follows holding in Muldrow to conclude that failure to transfer plaintiff to day shift was sufficient to constitute tangible employment action). Certainly, there can be no question that the denial of the letter of support meets the adverse employment definition from Muldrow. However, this Court need not reach that question to deny Defendants' Motion on this issue since, as discussed below, Defendants' action herein meets the definition of "tangible employment action" as previously interpreted by the Third Circuit Court of Appeals, and as applied by this Court in ruling on Defendants' Motion to Dismiss.

attempts to work with her again. ECF No. 1. In the Memorandum denying Defendants' Motion to Dismiss, this Court concluded that Dr. O'Reilly had plausibly alleged that the denial of her request for the letter of support constituted a "tangible employment action" because it represented a loss of a significant job benefit or characteristic, i.e., the opportunity to seek grant funding. ECF No. 38 at 25-30. In making this ruling, the Court relied on the following allegations for which there is ample evidentiary support following discovery:

- Dr. O'Reilly is required to secure funding to support fifty percent of her salary, benefits, and the expenses of her laboratory to retain her employment as a tenured Associate Professor at Fox Chase. See PSOF, ¶ 88.

- Dr. O'Reilly planned to apply for the ReWARD grant, which required an institutional letter of support from Defendants, in an effort to secure the required funding. See PSOF, ¶ 59.

- Defendants, including Defendant Chernoff, denied Dr. O'Reilly's initial request for an institutional letter of support. See PSOF, ¶¶ 60-65.

- Dr. O'Reilly could not meet the initial ReWARD grant application deadline of June 5, 2023, without the institutional letter of support. See PSOF, ¶ 89.

- Defendants' failure to provide the letter of support jeopardized Dr. O'Reilly's grant funding, her continued employment, her career, and her livelihood. See PSOF, ¶¶ 89-92.

- Dr. O'Reilly renewed her request for the letter of support for the ReWARD grant application in early August 2023, but Defendants still refused to provide it to her until September 14, 2023, *after* Defendants received notice of Dr. O'Reilly's administrative complaint filed with the PCHR. See PSOF, ¶¶ 98-116.

4

●      Defendants' denial of Dr. O'Reilly's request for a letter of support was a concrete action carried out by Defendants that caused her to lose the opportunity to seek grant funding. See PSOF, ¶¶ 59-65, 89-92, 98-116.

Despite the Court's ruling on this issue, and the existence of sufficient evidence to support Dr. O'Reilly's initial allegations, Defendants now make several arguments in support of their assertion that Dr. O'Reilly never experienced a tangible employment action, each of which is equally frivolous. See Defendants' Brief at 2-12.

First, Defendants argue that Dr. O'Reilly did not experience a tangible employment action because Defendant Chernoff "approved" Dr. O'Reilly's requests for a letter of support in March and August 2023. See Defendants' Brief at 2. In asserting that Defendant Chernoff "approved" Dr. O'Reilly's request for a letter of support in an email to Dr. Wiest on March 25, 2023, and again in August 2023, Defendants want this Court to ignore all the evidence: (1) that Defendants denied Dr. O'Reilly's initial request for a letter of support, in writing, on March 23, 2023; and (2) that Dr. O'Reilly was never notified of these later purported "approvals" of her requests until after she filed her administrative civil rights complaint. See PSOF, ¶¶ 65, 84-86, 98-105. If the Court already decided that the initial, written denial of Dr. O'Reilly's request for her letter of support on March 23, 2023, constituted a tangible employment action, the same must be true of that denial where there is no evidence (or any such evidence is disputed) that Defendants ever notified her of these later purported "approvals."

Defendants try to avoid this conclusion by asserting that their failure to "notify" Dr. O'Reilly that her request had been "approved" was just an innocent "mistake" by Dr. Wiest, who somehow missed receiving Defendant Chernoff's "approval" email on March 25, 2023. However, these fact assertions are far from undisputed. Importantly, the direct contradictions

between the testimony of Defendant Chernoff and Dr. Wiest means that a jury could easily find

that one of them is lying about how they responded to Dr. O'Reilly's requests. See PSOF, ¶¶ 63-

69. As the Supreme Court has recognized, a factfinder is entitled to consider a party's dishonesty

about a material fact as "affirmative evidence of guilt." Reeves v. Sanderson Plumbing Prods.,

530 U.S. 133, 146 (2000).

　　　　Defendants seem to suggest that Defendant Chernoff's denial of the letter of support on

March 23, 2023, cannot be considered a "tangible employment action" if he later "approved" it,

and it was someone else's fault (Dr. Wiest) that Dr. O'Reilly was never notified about it. But

accepting that argument would require the Court (and later the jury) to ignore all the evidence

that Dr. Wiest, a managerial agent of Defendants, facilitated Defendant Chernoff's sex-based

harassment of and retaliation against Dr. O'Reilly. See PSOF, ¶ 79. As Ellerth shows, the

requirement for vicarious liability is that the tangible employment action "resulted from" the

plaintiff's refusal to submit to her supervisor's sex-based demands, even if the supervisor's

discriminatory intent is carried out by the actions of others. Ellerth, 524 U.S. at 753-754.

Whatever "boys' club" shenanigans Defendant Chernoff and Dr. Wiest were up to behind the

scenes does not change this analysis where the "result" to Dr. O'Reilly was exactly the same.

　　　　Defendants also argue that the denial of Dr. O'Reilly's request for a letter of support

cannot be a "tangible employment action" because "its impact on her prospects of grant funding"

is speculative and any other harm is "subjective," similar to a "bruised ego." See Defendants'

Brief at 9-11. However, these arguments are foreclosed by the Court's prior ruling denying

Defendant's Motion to Dismiss on this issue. As the Court has already ruled, the Defendants'

denial of Dr. O'Reilly's request for an institutional letter of support for her ReWARD grant

application in March 2023, which precluded her from the opportunity to seek grant funding that

is necessary to retain her employment, can constitute a tangible employment action. ECF No. 38 at 25-30. Dr. O'Reilly has not and does not allege that the denial of her request for the letter of support in March 2023 is only actionable because her grant would have been funded had she filed the application in June. The "tangible employment action" happened when Defendants denied Dr. O'Reilly's request for a letter of support on March 23, 2023, which resulted in her inability to file her grant application in a situation where she was required to obtain grant funding as a condition of her employment. Defendants' arguments to the contrary must fail.

> B.    The Record Contains Plenty Of Evidence For A Reasonable Jury To Conclude That Defendants Retaliated Against Plaintiff By Denying Her Request For A Letter Of Support For Her Grant Application in 2023.

Plaintiff does not dispute the prima facie legal standard applicable to Plaintiff's retaliation claim as set forth in Defendants' Brief. To prevail on her retaliation claim premised on Defendants' denial of her request for a letter of support, Dr. O'Reilly must show that she engaged in protected conduct, that she experienced a materially adverse action, and that there was a causal connection between the protected activity and the materially adverse action. See Defendants' Brief at 12-13. Defendants do not dispute that Dr. O'Reilly engaged in protected conduct by making a good faith complaint of sex-harassment on January 25, 2023, when she complained to her supervisors about Defendant Chernoff's conduct towards her. Instead, in seeking summary judgment on the retaliation claim, Defendants argue that: (1) Dr. O'Reilly cannot establish a causal connection between her complaint and Defendants' denial of her request for the letter of support; and (2) that the denial of her request for the letter of support was not a "materially adverse" employment action. Defendants' arguments fail on both counts.

      1.        The Record Evidence Is More Than Enough For A Reasonable Jury To Conclude That Defendant Chernoff Denied Plaintiff's Request For A Letter Of Support *Because* She Had Complained About Him.

Defendants assert that Dr. O'Reilly cannot establish a causal connection between her protected conduct and their denial of her request for the letter of support because Defendant Chernoff later "approved" the request and it is "undisputed" that Defendants' failure to notify Dr. O'Reilly of the "approval" resulted from a "mistake." See Defendants' Brief at 13-15. However, as discussed above in connection with the sex-harassment claim, the record evidence shows clearly that Defendants denied Dr. O'Reilly's request in writing on March 23, 2023, and that no one ever notified her that she could get a letter of support for her ReWARD grant application until after she filed an administrative civil rights complaint challenging Defendants' denial. See PSOF, ¶¶ 60-65, 98-116.

Since the deposition testimony of Defendant Chernoff and Dr. Wiest raises a very reasonable inference that Defendant Chernoff lied about his initial denial of Dr. O'Reilly's request, it is also reasonable to infer that such denial was made in retaliation for Dr. O'Reilly's protected conduct. Why would Defendant Chernoff lie about his conversations with Dr. Wiest if he was not trying to hide his illegal motive? The fact that Defendant Chernoff later sent emails to Dr. Wiest purporting to "approve" the request for the letter of support does not undermine a reasonable inference that his initial denial was motivated by retaliation for Dr. O'Reilly's complaint against him.

Oddly, Defendants also assert that the record is undisputed that the only reason Dr. O'Reilly was not notified of Defendant Chernoff's supposed "approval" of her request in March was because Dr. Wiest made a "mistake" in failing to communicate the approval to her, and that Dr. Wiest notified Dr. O'Reilly right away when Defendant Chernoff purportedly "approved"

her request in August. <u>See</u> Defendants' Brief at 14-15. This is simply not true. A reasonable jury could easily conclude that Dr. Wiest received and read Defendant Chernoff's "approval" email from March 25, 2023, and may have even coordinated with Defendant Chernoff about sending it, but then chose not to notify Dr. O'Reilly of such "approval" in retaliation for her protected conduct. <u>See</u> PSOF, ¶¶ 79-87. Why would Dr. Wiest, who himself testified that he would have approved the request for the letter of support, facilitate the initial denial of Dr. O'Reilly's request by her alleged harasser if he did not share a retaliatory motive? Why did Dr. Wiest refuse to escalate Dr. O'Reilly's complaint about his boss as he was required to do pursuant to the Harassment Policy and instead go directly and only to the alleged harasser if not because he wanted to handle the situation within the "boys' club"? Will any reasonable juror believe Dr. Wiest's testimony that he never saw Defendant Chernoff's email where Defendants' own documents show that he received it? <u>Id.</u>

  With respect to the August 11, 2023, email exchanges between Defendant Chernoff and Dr. Wiest about Dr. O'Reilly's renewed request for the letter of support, Plaintiff does not dispute Defendants' assertion that they were not aware of her PCHR complaint at that time. <u>See</u> Defendants' Brief at 14-15. However, there is a genuine issue of material fact as to whether Dr. Wiest knowingly chose not to communicate Defendant Chernoff's purported "approval" that day to Dr. O'Reilly (whether or not with Defendant Chernoff's involvement). <u>See</u> PSOF, ¶¶ 99-106. Dr. Wiest had to admit at his deposition that his email to Dr. O'Reilly did not convey approval of her request. <u>Id.</u>, ¶ 105 ("Q. You did not tell her in this email that you had approval from the Institution to provide the letter of support, correct? A. *I didn't indicate it in this email*, but I had already gotten it. Q. Okay. But she didn't necessarily know that, correct? A. *Probably not*.") (emphasis added). And, importantly, the documentary evidence completely undermines Dr.

Wiest's testimony that he had received Defendant Chernoff's "approval" prior to sending his email back to Dr. Reilly. Id., ¶ 99-104. Based on this evidence, Defendants' argument that there is no causal connection between her protected conduct and her inability to obtain a letter of support for her grant application must be rejected.

> 2.    A Reasonably Jury Could Easily Conclude That Plaintiff Experienced A Materially Adverse Action.

Dr. O'Reilly recognizes that to establish her retaliation claim based on Defendants' denial (or refusal to provide) the letter of support for her ReWARD grant application, she must show that Defendants' action was "materially adverse," that is, it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington Northern and Sante Fe Ry Co. v. White, 548 U.S. 53, 68 (2006). In Burlington Northern, the Court considered whether a jury's findings that two decisions by the plaintiff's employer were retaliatory could be upheld using this standard: (1) the employer's decision to reassign the plaintiff from forklift duty to standard track laborer tasks; and (2) an unpaid 37-day suspension for which she was later reimbursed. As to both decisions, the Court concluded that the jury's findings that they constituted illegal retaliation were reasonable ones. Burlington Northern, 548 U.S. at 71-73.

Here, similarly, Defendants refusal to provide Dr. O'Reilly with her requested letter of support for her ReWARD grant application is sufficiently "materially adverse" to constitute retaliation. Although there is no dispute that Defendants later reversed course and notified Dr. O'Reilly that they would provide the requested letter of support on September 14, 2023, only after she took legal action, Dr. O'Reilly spent a period of almost six months (or 175 days) deprived of the opportunity to seek grant funding and reasonably believing that her employment at Fox Chase and her career were in jeopardy because of Defendants' actions. See PSOF, ¶¶ 65,

88, 118.

With respect to the unpaid suspension at issue in <u>Burlington Northern</u>, the Court confirmed that an unpaid suspension could well act as a deterrent to enforcing an employee's civil rights, even if the suspended employee eventually received backpay, because a reasonable employee facing the choice between retaining her job and paycheck and filing a discrimination complaint "might well choose the former." <u>Burlington Northern</u>, 548 U.S. at 73. In this case, Dr. O'Reilly followed the reporting procedures in her employer's Harassment Policy and made a good faith complaint about Defendant Chernoff's harassment to her supervisor, Dr. Wiest. <u>See</u> PSOF, ¶ 43. During the meeting at which her complaint was discussed, Dr. Wiest told Dr. O'Reilly that she had "his word" that Defendant Chernoff would never bother her again. <u>Id.</u> at ¶ 47. Instead, the record evidence is sufficient for a jury to conclude not only that Defendant Chernoff retaliated against Dr. O'Reilly, but that Dr. Wiest also participated in Defendants' refusal to provide her with the letter of support she needed to seek external grant funding, a requirement of her job. <u>Id.</u> Certainly, as with the unpaid suspension in <u>Burlington Northern</u>, a reasonable employee facing the choice between retaining the ability to seek the external funding required to keep her job and making a sex-harassment complaint might well choose the former. For this reason, Defendants' attempts to obtain summary judgment on Dr. O'Reilly's retaliation claim fail.

In their Brief, citing <u>Muldrow</u>, Defendants argue that the legal standard to state a retaliation claim, that is, a "materially adverse" action is "higher" than the standard that applies to her so-called *quid pro quo* harassment claim, that is, a "tangible employment action." <u>See</u> Defendants' Brief at 16. Defendants' assertion is baseless. While it is true that the Court in <u>Muldrow</u> confirmed that the standard for a "materially adverse action" is higher than the

standard that it had newly established for a disparate treatment discrimination claim, that is, the adverse employment action need not be "significant," the Court never addressed how its finding related to its prior analysis in Ellerth, which defined the standard for "tangible employment actions." See generally, Muldrow v. City of St. Louis, 601 U.S. 346 (2024). In the absence of some applicable guidance from the Supreme Court on this issue, courts must apply the standards established by the Court in Burlington Northern, which Defendants' actions clearly meet in this case.

In a footnote at the end of the section of their Brief addressing Dr. O'Reilly's retaliation claim, Defendants asserts that Defendant Chernoff is entitled to summary judgment with respect to "Count VII" of Plaintiff's Complaint because there was no underlying violation of the Philadelphia Fair Practices Ordinance ("PFPO") by Temple Health or Fox Chase. See Defendants' Brief at 17 n.5. Plaintiff notes that Count VII of her Complaint states a claim for sex-based harassment against Defendant Chernoff, not retaliation, which is in Count XIV. ECF No. 1. Regardless, Plaintiff agrees that she must prove her underlying claim of discriminatory sex-harassment against the entity Defendants in order for Defendant Chernoff to be liable as an individual for aiding and abetting such discrimination under the PFPO. See, e.g., Abdurahman v. Prospect CCMC, LLC, Civ. A. No. 20-3609 (E.D. Pa. Nov. 15, 2022) (considering different statutory language for discrimination and retaliation claims against individuals under the analogous PHRA). However, Defendant Chernoff may be directly liable for retaliation and retaliatory harassment under the PFPO regardless of whether the jury also finds the entity Defendants liable for those claims. Id.

C.    Plaintiff Is Entitled To Present Her Retaliatory Harassment Claim To The
        Jury This November.

Plaintiff filed her first administrative complaint of discrimination and retaliation, in

which she focused on Defendants' denial of her requested letter of support on August 31, 2023.

See PSOF, ¶ 108. In the year-plus between the date Dr. O'Reilly filed her initial administrative

complaint, and the filing of this federal court action, the PCHR investigated Dr. O'Reilly's

allegations relating to Defendants' retaliatory harassment after August 31, 2023. As outlined in

Plaintiff's Statement of Additional Facts, and the Exhibits filed therewith, Dr. O'Reilly's counsel

communicated with the PCHR investigators about her post-complaint retaliatory harassment

allegations, and Defendants' counsel responded. See PSOF, ¶¶ 151-153.

In her federal court Complaint, which was filed on October 3, 2024, Dr. O'Reilly

expressly asserted that Defendants' actions, after she filed her initial administrative complaint on

August 31, 2023, constituted retaliatory harassment. ECF No. 1, ¶¶ 98-108, 126-139.

Specifically, Dr. O'Reilly alleged the following retaliatory acts by Defendants, among other

things: failing to take her allegations seriously, to correct the violations of her civil rights, and/to

protect her from her harasser (¶ 99); making a false sworn statement that Defendant Chernoff's

email to her on January 23, 2023 was not inconsistent with his prior corrective action (¶ 100);

refusing to investigate her good faith complaint of harassment (¶¶ 101-102); falsely claiming that

Defendants never denied her request for a letter of support because doing so would trigger an

obligation to notify the NIH that the principal investigator for the Core Grant had been

disciplined for discrimination and/or retaliation (¶¶ 104-105); refusing to facilitate Dr. O'Reilly's

full participation as an Associate Professor, including in a myriad of ways she is expected to

collaborate with her colleagues (¶¶ 107); and by allowing Defendant Chernoff to be the ultimate

decision-maker with respect to the terms and conditions of her employment in violation of their

prior commitments that he would have no influence over her employment (¶¶ 107).

In their Brief, Defendants argue that the Court must grant summary judgment in their favor with respect to any allegations that "post-date" Dr. O'Reilly's filing of her initial PCHR administrative complaint for two reasons: first, for failure to exhaust her administrative remedies; and second, for failure to state a claim for retaliatory harassment.[4]

       1.    Plaintiff's Claim For Retaliatory Harassment Has Been Properly Exhausted.

In their Brief, Defendants make a half-hearted attempt to argue that Dr. O'Reilly may not present her claim for retaliatory harassment to a jury in November because she has not properly exhausted her administrative remedies with respect to such claim. See Defendants' Brief at 18. Defendants' argument is without merit. A plaintiff is not required to file separate administrative complaint with respect to claims concerning incidents "which fall within the scope of a prior [administrative charge] or the investigation that arose out of it." Morrison v. Custom Processing Services, Inc., 2023 WL 12091781 (E.D. Pa. Oct. 6, 2023) (citing Waiters v. Parsons, 729 F.2d 233, 235 (3d Cir. 1984)).

In this case, the incidents that comprise Dr. O'Reilly's retaliatory harassment claim clearly fall within the scope of the PCHR's investigation of her initial complaint. Not only "could they" have been uncovered by the PCHR's investigation, but Defendants' retaliatory harassment towards Dr. O'Reilly, a current employee, was expressly addressed by the parties in their communications with the PCHR investigator. See PSOF, ¶¶ 151-153. Defendants cannot

---

[4] In their Brief, Defendants make a variety of "separate" arguments about how Plaintiff's allegations are insufficient to state a claim for retaliatory harassment. See Defendants' Brief at 18-21. However, since Dr. O'Reilly asserts that the totality of Defendants' conduct towards her between the filing of her PCHR complaint on August 31, 2023, and the filing of her federal court complaint in early October 2024, constitutes retaliatory harassment, Plaintiff will address all of Defendants arguments together.

now argue that Dr. O'Reilly's allegations of retaliatory harassment are defeated by the fact that she did not file a new administrative charge during the pendency of the initial charge. After all, Dr. O'Reilly's initial PCHR complaint, and the PCHR's subsequent investigation of it, accomplished both purposes of administrative exhaustion: first, putting the employer on notice that a complaint has been lodged, which gives it the opportunity to take remedial action (which the entity Defendants did not); and second, giving the agency the opportunity to eliminate any alleged unlawful practice through the informal methods of conciliation, conference, and persuasion. Alston v. Penn State Health, 2023 WL 5214071, *3 (M.D. Pa. Aug. 14, 2023) (citing cases).

Defendants' argument that Dr. O'Reilly failed to exhaust her administrative remedies fails for the additional reason that such argument has been waived. In their Answers to the federal court Complaint, Defendants asserted that Plaintiff had failed to exhaust her administrative remedies. ECF No. 14, Fourth Affirmative Defense. However, discovery has confirmed that Defendants' asserted affirmative defense related only to the extent Plaintiff sought a remedy for the sex-based harassment she endured in 2014/2015. See PSOF, ¶¶ 194-195. Since Defendants failed to properly raise or preserve an affirmative defense that her stated claim for retaliatory harassment was not properly exhausted, such argument is waived. Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997) (failure to exhaust administrative remedies is an affirmative defense that requires defendant to both plead and prove that plaintiff failed to exhaust administrative remedies).

      2.    The Record Contains Plenty Of Evidence For A Reasonable Jury To Conclude That Defendants Subjected Plaintiff To Retaliatory Harassment.

In their Brief, Defendants identify a few of the post-August 2023 allegations contained in Dr. O'Reilly's Complaint, and suggest that none of them, independently, is sufficient to establish

a claim for retaliation. See Defendants' Brief at 18-21. However, Dr. O'Reilly's claim based on Defendants' post-August 2023 conduct is one for retaliatory harassment, not retaliation. See, generally, Complaint, ECF No. 1. As this Court has confirmed, a civil rights plaintiff may establish a claim for retaliatory harassment by showing that she experienced a series of employer actions that are "materially adverse," that is, would dissuade a reasonable worker from making or supporting a charge of discrimination. Fields v. American Airlines, Inc., 696 F. Supp. 3d 66, 101, 108 (E.D. Pa. 2023); see also Hamilton v. Norristown State Hospital, 2024 WL 3623521, *3-5 (E.D. Pa. Aug. 1, 2024). Although a plaintiff who engages in protected conduct cannot state a claim for retaliatory harassment based on the "ordinary tribulations of the workplace," such as "petty slights or minor annoyances," she may recover for a series of retaliatory employer actions if a reasonable jury could find that such actions, taken together, are "materially adverse." Hamilton, 2024 WL 3623521, *5.

In this case, as set forth in more detail in Plaintiff's Statement of Additional Material Facts, a reasonable jury could conclude that Defendants engaged in the following retaliatory actions after Dr. O'Reilly filed her initial PCHR complaint on August 31, 2023:

● Despite being obligated by the law and their own Harassment Policy to prevent retaliation against Dr. O'Reilly following her PCHR complaint, Defendants took no action to protect Dr. O'Reilly from any additional discriminatory harassment or retaliation by Defendant Chernoff or otherwise. See PSOF, ¶¶ 113-115.

● Instead, Dr. Wiest, Dr. O'Reilly's supervisor who had been identified by Defendants to prevent retaliation against her, made a knowingly false statement to Dr. O'Reilly on September 14, 2023, that his prior email to her on August 11, 2023, was intended to confirm that Defendants would provide her with the requested letter of support. See PSOF, ¶¶ 114, 116-

16

117.

- Shortly after Dr. O'Reilly filed her PCHR Complaint, Defendants' Human Resources representative, Holly Molle, called a meeting with Dr. O'Reilly and Dr. Wiest at the direction of Defendants' in-house attorneys purportedly to discuss her "reporting structure," during which Ms. Molle inappropriately pressed her about the details of her legal filing. See PSOF, ¶¶ 119-120.

- Dr. Wiest considered Dr. O'Reilly to be "unprofessional" by continuing to restate her concerns about the violation of her civil rights, rather than focus on the "solutions" he provided, even though it was clear to both of them that the proposed "solutions" failed to take into account Defendant Chernoff's violations of the prior corrective action against him, and/or Defendants' illegal refusal (until she filed her PCHR complaint) to provide her requested letter of support. See PSOF, ¶¶ 122-127.

- Defendants violated their own Harassment Policy by failing to provide a Determination to Dr. O'Reilly with respect to their investigation of her PCHR complaint. See PSOF, ¶¶ 107-108, 129-130.

- The only way Dr. O'Reilly learned of Defendants' "determination" with respect to any "investigation" they conducted of her PCHR complaint, which she was forced to file to secure the letter of support for her grant application, was through Defendants' PCHR Answer, which was full of misrepresentations about the terms of the prior corrective action against Defendant Chernoff, and whether his conduct violated those restrictions. See PSOF, ¶¶ 131-132, 135-136.

- Through Defendants' PCHR Answer, Dr. O'Reilly also learned that Defendants considered an investigation into her allegations of significant civil rights violations to be too

burdensome for them in this case, even though it would have been consistent with their policies and procedures. <u>See</u> PSOF, ¶¶ 131-133.

● Despite their knowledge that Defendant Chernoff violated the terms of the corrective action that had been put in place to protect Dr. O'Reilly from further discriminatory harassment and/or retaliation, Defendants refused to discipline, warn, or otherwise take action against him. <u>See</u> PSOF, ¶¶ 135-137.

● Given the history of the situation, and Defendants' refusal to enforce the terms of prior corrective action against him and/or to hold him accountable for his violations of the prior corrective action or his more recent discriminatory harassment and retaliation against Dr. O'Reilly resulted in Dr. O'Reilly's reasonable upset and fear at being in Defendant Chernoff's presence after she filed the PCHR complaint. <u>See</u> PSOF, ¶¶ 1-11, 32, 36-42, 77-79, 183, 186-188.

● As a result of Defendants' conduct, including its refusal to take her allegations of Defendant Chernoff's illegal actions seriously and/or educating the Human Resources managers and supervisors tasked with the responsibility to address the situation about the history of the situation, Dr. O'Reilly was repeatedly forced to revisit upsetting and traumatic experiences. <u>See</u> PSOF, ¶¶ 126, 165, 172, 181.

● As a result of Defendants' conduct, including its failure to act, Dr. O'Reilly was unable to participate in at least three "mandatory" program meetings, opportunities to present her work, and/or collaborate with her colleagues at faculty meetings and retreats: the Cancer Signaling and Microenvironment retreat in early Spring 2024; the chance to present at a Wednesday Faculty Seminar in the fall 2024; and at the Fox Chase all faculty retreat that took place in September 2024. <u>See</u> PSOF, ¶¶ 143-150, 157-161, 162-180.

18

● In rejecting Dr. O'Reilly's proposal for her participation at the faculty retreat in September 2024, Defendants rejected, apparently on the advice of counsel, accommodations that were more than reasonable and that were suggested by one of its Human Resources leaders. See PSOF, ¶¶ 162-180.

Plaintiff acknowledges that the jury may ultimately reject her claim that Defendants subjected her to retaliatory harassment after she filed her PCHR complaint. However, viewing this series of actions in the light most favorable to Dr. O'Reilly, many of which have directly interfered with her ability to meet the performance expectations of her job, a reasonable jury could conclude that they together are "materially adverse" sufficient to support a verdict in her favor. For this reason, this Court must deny Defendants' Motion with respect to this claim.

D.    The Record Contains Plenty Of Evidence For A Reasonable Jury To Conclude That Temple University Is A Proper Defendant In This Case.

For their last argument on summary judgment, Defendants assert that Temple University is not a proper defendant in this case because it cannot be considered Dr. O'Reilly's "employer" pursuant to the federal and/or local anti-discrimination laws, and that Dr. O'Reilly has not identified sufficient evidence to hold it liable for "aiding and abetting" the actions of Dr. O'Reilly's W-2 employer. See Defendant's Brief at 21-25. Both arguments must be rejected.

First, Defendants fail to acknowledge that separate entities can be treated as "a single entity for purposes of antidiscrimination laws" when, among other circumstances, a parent company has directed the subsidiary's act of which the plaintiff is complaining, or the affairs of two or more entities are so interconnected that they collectively cause the alleged discriminatory practice. Equal Employment Opportunity Commission v. Geisinger Health, et al, 2022 WL 10208553, *5 (E.D. Pa. Oct. 17, 2022). In considering whether entities are sufficiently interconnected to be treated as a single entity, courts consider their degree of "operational

19

entanglement," which includes an evaluation of the degree of unity between the entities, whether they present themselves as a single entity, whether the parent company covers the salaries, expenses or losses of its subsidiary, and whether one entity does business exclusively with the other. Id. at *6.

Here, the record evidence of Temple University's entanglement with Temple Health and Fox Chase, including with respect to the illegal discriminatory acts against Dr. O'Reilly, is sufficient for a reasonable jury to hold all the entity Defendants liable as a single employer. There is no factual dispute that Fox Chase and Temple Health are wholly owned and controlled by Temple University. See PSOF, ¶ 198. Defendant Chernoff's boss, Temple Health's CEO, reports to Temple University's Board of Directors. Id., ¶ 200. Fox Chase, of which Defendant Chernoff is Director, serves as the cancer center for Temple University, and Defendant Chernoff serves as a Dean for Temple University. Id., ¶ 199, 201-202. John C. Ryan, Chief Counsel for Temple Health, is a part of and reports into Temple University's Office of University Counsel. Id., ¶ 204. According to its public annual reports, "Fox Chase Cancer Center at Temple Health" is integrated with and routinely collaborates in numerous ways with Temple University. Id., ¶ 204. Finally, Temple University (and its insurer) will be responsible for the liability for all the entity Defendants they face in this case. See PSOF, ¶¶ 205-206.

Even if the Court determines that Temple University cannot be considered Dr. O'Reilly's "employer" for purposes of the anti-discrimination statutes, there is sufficient evidence for a jury to reasonably conclude that Temple University is liable for the retaliatory harassment of Dr. O'Reilly since she filed her initial PCHR complaint – either directly or as an aider or abettor. A separate entity can be liable for "aiding or abetting" the discriminatory acts of an employer or directly for retaliatory acts. See Phila. Code § 9-1103(1)(h) (it is an unlawful employment

practice under PFPO for "any person" to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice); <u>Lett v. Se. Pa Transp. Auth</u>., Civ. A. No. 19-3170 (E.D. Pa. Nov. 26, 2021) (rejecting summary judgment for union in disability discrimination claim where sufficient evidence that union aided and abetted employer's failure to accommodate plaintiff); Phila. Code § 9-1103(1)(g)(it is unlawful for any person to penalize, retaliate or discriminate in any manner against any person because of protected conduct).

Here, the record evidence reasonably suggests that it was Temple University's Office of University Counsel, of which Temple Health's attorney is a part, that enabled and/or directly orchestrated Defendants' retaliatory harassment of Dr. O'Reilly since she filed her PCHR complaint, particularly given the misrepresentations in Defendants' PCHR Answer, Ms. Molle's efforts to engage with Dr. O'Reilly about the status of her complaint immediately after consulting with the in-house attorneys, and Ms. Record's decision to reject her supervisor's suggestions about the faculty retreat was made after she had been directed by the in-house attorneys to work with Dr. O'Reilly. <u>See</u> PSOF, ¶ 119-120, 131-136,162-180.

IV.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff respectfully asks this Court to deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

UEBLER LAW LLC

<u>/s/Julie A. Uebler</u>
Julie A. Uebler, Esquire
Attorney ID No. 71297
101 Lindenwood Drive, Suite 225
Malvern, Pennsylvania 19355
(484) 875-3186
uebler@ueblerlaw.com
*Attorney for Plaintiff*
*Alana M. O'Reilly, Ph.D.*

CERTIFICATE OF SERVICE

I, Julie A. Uebler, hereby certify that a true and correct copy of Plaintiff's Response in

Opposition to Defendants' Motion for Summary Judgment, Plaintiff's Response to Defendants'

Statement of Undisputed Material Facts, Plaintiff's Statement of Additional Material Facts,

Exhibits and a proposed Order were filed with the Court on July 29, 2025, and are available for

viewing and downloading from the ECF system by the following counsel of record:

Elizabeth A. Malloy, Esquire
Benjamin L. Shechtman, Esquire
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
emalloy@cozen.com
bshechtman@cozen.com

*Attorneys for Defendants The Institute for Cancer Research d/b/a Fox Chase Cancer Center,
Temple University Health System, Temple University and Jonathan Chernoff, M.D., Ph.D.*


/s/Julie A. Uebler
Julie A. Uebler, Esquire