IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALANA M. O'REILLY, Ph.D., | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. 2:24-CV-05315 |
| v. | : |
| | : (JUDGE MARSTON) |
| | : |
| | : [ELECTRONICALLY FILED] |
| THE INSTITUTE FOR CANCER RESEARCH, TEMPLE UNIVERSITY HEALTH SYSTEM, TEMPLE UNIVERSITY, and JONATHAN CHERNOFF, MD, Ph.D., | : |
| | : |
| Defendants. | : |

**REPLY BRIEF IN FURTHER SUPPORT
OF DEFENDANTS' MOTION
<u>FOR SUMMARY JUDGMENT AS TO ALL REMAINING CLAIMS</u>**

**COZEN O'CONNOR**

Benjamin L. Shechtman
bshechtman@cozen.com
Elizabeth A. Malloy
emalloy@cozen.com
1650 Market St., Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2046
Facsimile: (215) 372-2344

Attorneys for Defendants

Dated: August 5, 2025

I.   **INTRODUCTION.**

In her Response in Opposition to Defendants' Motion for Summary Judgment as to All Remaining Claims ("Response" or "Pl. Resp."), Plaintiff Alana M. O'Reilly fails to identify any case standing for the proposition that her non-receipt of a Letter of Support was a tangible or material adverse employment action.  In claiming that Defendants failed to investigate her complaints, discipline Dr. Chernoff or grant her demands, Plaintiff ignores relevant case law and highlights precisely why the Court must grant summary judgment as to her retaliatory harassment claims.  Finally, Plaintiff's Response clarifies that Plaintiff has no basis upon which to hold Temple University liable.

II.  **ARGUMENT.**

   A.   **PLAINTIFF'S RETALIATORY HARASSMENT CLAIMS MUST BE DISMISSED.**

Plaintiff's Response elucidates additional reasons why her retaliatory harassment claims must be dismissed: the record evidence forecloses the conclusion that any of the acts she identifies constitute harassment.  Plaintiff fails to cite any case standing for the proposition that any of the acts she identifies constitutes harassment, and Defendants have already addressed in their opening Brief a number of the incidents Plaintiff cites on pages 16-19 of her Response. ECF No. 46-2, Def. Br. at 18-21.  For present purposes, it bears emphasis that Plaintiff completely ignores the cases cited by Defendants that stand for the proposition that she cannot assert a claim that TUHS and FCCC failed to investigate her complaints,[1] failed to protect her

---

[1] Plaintiff's assertions that TUHS and FCCC violated their policies by not conducting an internal investigation of her PCHR Complaint or a determination thereafter are nothing more than falsehoods.  During her deposition, Allyson Saccomandi (TUHS Vice President of Organizational Development and Leadership) made it clear that TUHS' policies do not apply when an employee makes a complaint of discrimination to an external agency such as the PCHR. Saccomandi Dep. at 157:8-14 ("Nowhere in the Investigation B or Determination C does it say

from future, hypothetical discrimination or retaliation or failed to take disciplinary action based on her complaints.

The balance of Plaintiff's new allegations of mistreatment simply do not constitute harassment of her. Given that Plaintiff and Dr. Chernoff did not communicate or interact after Plaintiff filed her PCHR Complaint, it is not surprising that her new allegations focus on other individuals, including Dr. Wiest and Human Resources. First, Plaintiff claims that Dr. Wiest "harassed" her by clarifying, in his September 14, 2023 email to her, that his August 11, 2023 email was intended to communicate the approval of her Letter of Support. Since Plaintiff sent Dr. Wiest notice of her PCHR Complaint filed on August 30, 2023, it should go without saying that, as of September 14, 2023, Dr. Wiest knew that Plaintiff claimed not to understand that her Letter of Support had been approved. There is no record evidence that Dr. Wiest's statement was "knowingly false" as Plaintiff claims, or that his September 14, 2023 email was intended for any other purpose than to assure Plaintiff that the Letter of Support had been approved (and in the works – especially given that she received it that same month). Plaintiff does not dispute that the Letter of Support was approved before she filed her PCHR Complaint. *See* ECF No. 48-2, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ¶¶ 62-65.

Next, Plaintiff cites Dr. Wiest's testimony that Dr. Wiest "considered" Plaintiff to be "unprofessional." Yet Dr. Wiest made this comment during his deposition, and there is no evidence that Dr. Wiest had previously communicated this belief to anyone – let alone that Dr. Wiest took any action based on it. As such, this deposition testimony was not harassment. *C.f. Larkin v. Methacton Sch. Dist.*, 773 F. Supp. 2d 508, 538-539 (E.D. Pa. 2011) (employer's

---

what the process is when the external agency is involved."). Plaintiff's subjective interpretation in this context therefore is irrelevant.

assertion that plaintiff failed to engage in the interactive process "simply does not constitute" retaliatory harassment).[2]

Similarly, Plaintiff claims that Holly Molle "harassed" her during the October 5, 2023 meeting with Plaintiff and Dr. Wiest during which Plaintiff was informed that she would be reporting to Dr. Wiest. Specifically, Plaintiff cites Ms. Molle's questions to Plaintiff – shortly after Dr. Wiest stated that Plaintiff had sent him a courtesy copy of her PCHR Complaint – "how the Commission worked" and "Who saw him take the photos?" Pl. Ex. 30. While Plaintiff labels these questions "inappropriate," she fails to explain how these comments constitute harassment of her. Pl. Resp. at 17. Plaintiff offers no evidentiary support for her subjective interpretation of these comments.

Finally, Plaintiff asserts that TUHS and FCCC "failed to act," which "interfered with her ability to meet the performance expectations of her job." Pl. Resp. at 19. Initially, Plaintiff cites no authority that an alleged failure to act can constitute harassment, and ignores the cases cited on pages 19-20 of Defendants' opening Brief for the proposition that an employee cannot predicate a claim on an alleged failure to protect an employee from future discrimination or retaliation. Plaintiff also misrepresents the undisputed facts, which are that Plaintiff was offered the ability to participate in program meetings via Zoom and to have Ms. Record attend the faculty retreat in September 2024. Indeed, during the email exchange attached as Plaintiff's Exhibit 38, Plaintiff was told that she was "not the only person" attending this meeting via Zoom or presenting via Zoom at this meeting. See O'REILLY_PCHR 0505. In this email, it was explained to Plaintiff by Edna Cukierman:

> Dear Alana,

---

[2] This principle applies with equal force to Plaintiff's allegations regarding "Defendants' PCHR Answers" which cannot be considered retaliatory as a matter of law.

> You are not the only person [participating via Zoom]. There is at least one other (Kelly W) who asked to present via zoom and two more requested the link saying they will try to make too. Jinhua recorded a video but asked that I play it only if he does not make it, so I'll upload that one last. I think it should be fine either way. I will start to set all talk on the computer at the auditorium starting at 1 30. Feel free to let me know what your preference is and I'll do my best to accommodate it.
> Best wishes
> Eti

As such, the only reasonable conclusion to be drawn from the record is that it was up to Plaintiff whether and how to participate in these events and that TUHS and FCCC did not single her out in any relevant manner. Moreover, Plaintiff's assertions lack merit as Plaintiff cites no record evidence (because none exists) that TUHS or FCCC considered her deficient in her performance following the filing of her PCHR Complaint.

The case law cited by Plaintiff also does not support the conclusion that her retaliatory harassment claims should survive summary judgment. In *Hamilton v. Norristown State Hospital*, No. 23-4068, 2024 WL 3623521 (E.D. Pa. Aug. 1, 2024), the Court held that the plaintiff's retaliatory harassment claim survived summary judgment where the plaintiff alleged that, following her protected conduct:

> Still, for "the next several months" after that, Hamilton alleges, Portnoy "continually denied [her] access to necessary information to complete her work," and on one occasion "struck her in the shoulder."
>
> Then, in April 2022, Hamilton "was subjected to unjustified discipline." And after that, she alleges, the explicitly racist conduct escalated: In May 2022, she alleges in her Complaint, a supervisor "approached an employee and said, 'we need to get all these n****rs' out of here" and then "began to sing 'n****r, n****r, n****r.' " Hamilton says the incident "was immediately reported" to Norristown. It did not stop there: That same month, Portnoy "physically pushed" her. And, even though Hamilton was removed from Portnoy's supervision (and placed under the supervision of supervisor Kristen Clement), she alleges, Portnoy

4

continued to harass and intimidate her.

*Id.* at *2.

Plaintiff's evidence comes nowhere near approaching this level of harassment; as explained above, Plaintiff fails to even attempt to explain how she experienced harassment under existing caselaw. The record evidence aligns much more closely with *Larkin v. Methacton Sch. Dist.*, 773 F. Supp. 2d 508, 538-539 (E.D. Pa. 2011), in which the plaintiff claimed that, following a reasonable accommodation interactive process, Methacton School District "engaged in retaliatory harassment by 'wrongfully accusing her of not providing the results of her blood test,' by 'insisting that she return to the high school despite medical advice to the contrary,' and by 'accusing her of not participating in the interactive process.'" *Id.* at 538. Granting summary judgment to the School District and specifically addressing the communications at issue, the court explained:

> Larkin may genuinely have found such accusations and the tone of Harney's e-mail distressing. But in determining whether alleged retaliatory conduct constitutes an "adverse action" within the meaning of the ADA's antiretaliation provision, courts must employ an objective standard, the question is whether "a reasonable employee [in the plaintiff's position] would have found [Harney's accusations] materially adverse." *Burlington N.*, 548 U.S. at 68 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective."). Moreover, "[i]n evaluating whether actions are materially adverse, [a court] must remain mindful that 'it is important to separate significant from trivial harms' because '[a]n employee's decision to [engage in protected activity] cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 346 (3d Cir. 2006) (quoting *Burlington N.*, 548 U.S. at 68). Here, neither Harney's accusations nor his e-mail exchange with Larkin rises to the level of a "materially adverse" action that might "dissuade a reasonable worker from [engaging in protected activity]." *Burlington N.*, 548 U.S. at 57. …

5

> Larkin has offered no evidence that would suggest that the District's insistence that she return to the high school rose to the level of harassment.

*Id.* (emphasis in original).

The Court should reach the same conclusion with respect to Plaintiff's retaliatory harassment claim. Like Larkin, Plaintiff offers no evidence that any of the alleged post-PCHR Complaint conduct she cites was harassment, or that, taken together, it was materially adverse. On the contrary, the undisputed facts compel the conclusion that, after Plaintiff filed her PCHR Complaint, TUHS and FCCC made legitimate efforts to address the concerns she raised about her work environment in the context of her pending litigation against them. Plaintiff's disagreement with virtually every aspect of those efforts – without more – does not convert them into retaliatory harassment.[3]

### B.   PLAINTIFF DID NOT EXPERIENCE A TANGIBLE OR MATERIAL ADVERSE EMPLOYMENT ACTION.

In her Response, Plaintiff responds to Defendants' evidence that she did not experience a tangible or material adverse employment action (because she has no evidence of objective harm) by ignoring the record evidence and by comparing the Letter of Support to the indefinite suspension without pay in *Burlington Northern and Sante Fe Ry Co. v. White*, 548 U.S. 53 (2006). The former is glaring, and the latter is not persuasive. First, rather than addressing the record evidence, Plaintiff asserts that the argument that Plaintiff did not experience a tangible employment aspect is "foreclosed," which is plainly wrong. The Court's May 29, 2025 Memorandum Opinion granting in part Defendants' Rule 12(b)(6) partial Motion to Dismiss

---

[3] Defendants maintain that, for the reasons set forth in their opening Brief, Plaintiff's retaliatory harassment claim is neither pleaded in the Complaint nor administratively exhausted. There is no Count in the Complaint entitled "Retaliatory Harassment," and Plaintiff acknowledges in her Response that there is a different legal standard applicable to such a claim.

focused only on Plaintiff's Complaint allegations, not about the <u>evidence</u>. *See* ECF No. 38 at 8 ("In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To that end, the Cout found that "Dr. O'Reilly has **plausibly alleged** that she experienced a tangible employment action when Defendants denied her request for an institutional letter of support for her ReWARD grant application in March 2023," not that Defendants are precluded from arguing that she did not experience a tangible employment action or a materially adverse employment action for purposes of her retaliation claims. ECF No. 38 at 30 (emphasis added). This is simply an attempted end-run around Plaintiff's deposition admission ("[a]ll of this is, obviously, speculation") and the expert opinion testimony of Dr. Curiel.

Nor is *Burlington Northern* analogous to this case. What the Court emphasized in *Burlington Northern* was not just the length of time of White's indefinite suspension, but rather the fact that the suspension was unpaid and that White did not know whether she would be permitted to return to work. 548 U.S. at 72 ("White and her family had to live for 37 days without income. They did not know during that time whether or when White could return to work."). Thus, *Burlington Northern* is distinguishable from the instant case in at least two ways: (1) Plaintiff has no economic damages; and (2) Plaintiff has no evidence she was ever facing termination.

Despite referring to "the ability to seek the external funding required to keep her job" (*see* Pl. Rep. at 11), Plaintiff has failed to direct this Court to any evidence that she actually needed the ReWARD Grant funding to remain employed and admits that a first NIH grant submission is very rarely funded. When viewed in the context of her admission that the

7

ReWARD Grant opportunity was speculative and the Curiel Report, Plaintiff's lack of evidence of objective harm supports the entry of summary judgment in favor of Defendants as to her quid pro quo harassment and retaliation claims.[4]

### C.    TEMPLE UNIVERSITY MUST BE DISMISSED AS A DEFENDANT.

Plaintiff's evidence falls woefully short of the legal standards for holding Temple University liable in this case. Plaintiff first posits that Temple University is "so interconnected" with TUHS and/or FCCC as to be a single entity. Pl. Resp. at 19. Yet the legal standard is that "Defendants' operations are so entangled that 'nominal employees of one company are treated interchangeably with those of another.'" *Equal Employment Opportunity Commission v. Geisinger Health, et al.*, No. 21-4294, 2022 WL 10208553, at *6 (E.D. Pa. Oct. 17, 2022) (Marston, J.). Merely being a corporate parent does not meet this standard. *Id.* While pointing to various evidence that Temple University is a related entity to TUHS and FCCC, reporting relationships of corporate executives and aspects of insurance coverage that are typical of a parent-subsidiary also do not meet this standard. *See id.* Similarly, the fact that Dr. Chernoff and other employees of FCCC or TUHS collaborate with and hold titles at Temple University does not mean that Temple University, TUHS and FCCC "present themselves as one entity such that third parties treat them as one unit; that [Temple University] covers the salaries, expenses, or losses of the other Defendants' employees; or that Defendants exclusively do business with one

---

[4] Defendants acknowledge that Plaintiff has now clarified that she is asserting a retaliation claim, as opposed to an aiding and abetting claim against Dr. Chernoff under the PFPO in Count XIV. However, Dr. Chernoff is entitled to summary judgment on this claim. For the reasons explained in Defendants' opening Brief and herein, there is no evidence that Dr. Chernoff was "personally involved" in either Plaintiff's non-receipt of the Letter of Support in March 2023 (which he undisputedly ultimately approved) or any of the acts that Plaintiff claim contribute to her retaliatory harassment claim. *Fleet v. CSX Intermodal, Inc.*, Civ. A. No. 17-3562, 2018 U.S. Dist. LEXIS 120256, 2018 WL 3489245, at *18 n.174 (E.D. Pa. July 18, 2018) ("Individual liability under the FMLA, PHRA, and PFPO require personal involvement.") (collecting cases).

8

another." *Id.*

Plaintiff's aiding and abetting argument is even weaker: Plaintiff claims that "evidence reasonably suggests that it was Temple University's Office of University Counsel, of which Temple Health's attorney is a part, that enabled and/or directly orchestrated Defendants' retaliatory harassment of Dr. O'Reilly since she filed her PCHR complaint[.]" Pl. Resp. at 21. But this is nothing more than conjecture, which cannot defeat summary judgment. *McDowell v. Moran Foods, LLC*, 680 F. App'x 72, 75 (3d Cir. 2017) ("Pure conjecture cannot defeat summary judgment[.]") (citation omitted). Plaintiff points only to evidence that Holly Molle and Towanda Record spoke with in-house counsel for FCCC, not Temple University. Plaintiff has no additional evidence to support this assertion. Moreover, Plaintiff's factual allegation that the Chief Counsel for Temple Health, is a part of and reports into Temple University's Office of University Counsel does not make Temple University a proper defendant under the applicable legal standard. *See Equal Employment Opportunity Commission v. Geisinger Health, et al.*, 2022 WL 10208553, at *5-6. For these reasons, Temple University must be dismissed as a defendant in this case.

### III. CONCLUSION.

For the foregoing reasons, and those explained in Defendants' opening Brief, Defendants respectfully request that the Court grant their Motion and enter summary judgment in their favor as to all remaining claims asserted in Plaintiff's Complaint. In the alternative, to the extent that any aspect of Plaintiff's remaining claims survives summary judgment, then the Court should dismiss Temple University as a defendant in this case.

9

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **Cozen O'Connor** |
|  | /s/ Benjamin L. Shechtman<br>Benjamin L. Shechtman<br>bshechtman@cozen.com<br>Elizabeth A. Malloy<br>emalloy@cozen.com<br>1650 Market St., Suite 2800<br>Philadelphia, PA  19103<br>Telephone:  (215) 665-2046<br>Facsimile:  (215) 372-2344 |
| Dated:   August 5, 2025 | Attorneys for Defendants |

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2025, the foregoing Reply Brief in Further Support of Defendants' Motion for Summary Judgment has been filed via the Court's electronic system and to be served on the following counsel of record for Plaintiff via the Court's CM/ECF system:

Julie A. Uebler, Esquire
Uebler Law LLC
101 Lindenwood Drive, Suite 225
Malvern, PA  19355

By: /s/ Benjamin L. Shechtman
    Benjamin L. Shechtman